**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Petitioner,**

v.

**GENERAL DYNAMICS CORP., Respondent.**

No. 85–1699.

United States Court of Appeals, First Circuit.

Argued Feb. 5, 1986.

Decided March 31, 1986.

Marianne Demetral Smith, U.S. Dept. of Labor, with whom George R. Salem, Deputy Sol. of Labor, and Donald S. Shire, Associate Sol., Washington, D.C., were on brief, for petitioner.

Norman P. Beane, Jr. with whom Stephen E. Laskin and Murphy & Beane, Boston, Mass., were on brief, for respondent.

Before COFFIN and ALDRICH, Circuit Judges, and PETTINE,* Senior District Judge.

BAILEY ALDRICH, Senior Circuit Judge.

Raymond Fantucchio, an employee of respondent General Dynamics Corporation, suffered an employment-related heart attack on January 19, 1979, and has since been receiving permanent total disability benefits pursuant to the Longshore and Harbor Workers Compensation Act, 33 U.S.C. § 901 et seq. The sole issue is whether, pursuant to section 8(f) of the Act, (§ 908(f)), respondent may transfer liability for the disability payments, after the first 104 weeks, to the Special Fund, viz., whether Fantucchio had been previously suffering from a manifest "permanent partial disability." *See Atlantic & Gulf Stevedores v. Director, Office of Workers' Compensation Programs,* 542 F.2d 602, 609 (3d Cir.1976) and cases cited therein. The ALJ found he had not been, but the Benefits Review Board reversed and the Director of the Office of Workers' Compensation Programs petitions for review. We affirm.

The disability for which Fantucchio is being compensated is due to hypertensive cardiovascular disease. Respondent's physician stated that he would regard the January 19, 1979 disabling heart attack as having "resulted from the natural, spontaneous and inevitable progression of his underlying coronary disease, a non-industrial process," unless there was some work-connected, precipitating incident. Such was, in fact, found, Fantucchio having been exposed to fumes in a poorly ventilated area that, though to a lesser extent, affected other workers as well. The question of disability, and that it is work-connected, is not in the case. On the other hand, Fantucchio's previous condition is inescapably in the case, and the first[1] ALJ's initial remark, "if, indeed, such pre-existing condition existed," is not understandable. Even the medical records introduced by Fantucchio himself showed a history of hypertension "for years," as did his testimony on the stand. The question, rather, is whether it was of sufficient consequence to fall within the statutory purpose, whether it was such that, absent the statutory protection, a cautious employer might well hesitate to hire him. By a process of not mentioning the evidence the ALJ did not discuss this question. Rather, he merely concluded,

[T]here is no evidence in the record to indicate that prior to the episode on January 19, 1979, the claimant had sustained or was suffering from any permanent partial disability.

In his brief before us the Director says the ALJ's "conclusion that Fantucchio had no manifest hypertension prior to January, 1979, was supported by substantial evi-

* Of the District of Rhode Island, sitting by designation.

1. The Board, on its first review, reversed a finding against the respondent, on the ground that the ALJ's decision was unsupportable—the issue now before us—and remanded for a finding whether the employee's previous condition in fact contributed to his present disability. This question, quite properly, was passed upon by a second ALJ, who found in respondent's favor, post.

dence in the record as a whole." This is simply not so. It is of course true that the Benefits Review Board cannot reverse an ALJ whose findings are supported by substantial evidence, 33 U.S.C. § 921(b)(3); *Janusziewicz v. Sun Shipbuilding & Dry Dock Co.*, 677 F.2d 286, 290 & n. 7 (3d Cir.1982), but there was no substantial evidence that Fantucchio did *not* have hypertension. In his original, 1966, application for employment, not only did Fantucchio admit to a previous history of hypertension, but the company physician recorded 160/100, a clearly high figure.[2]

Apparently to support his assertion that "no condition of hypertension was manifest ... at any time prior to the actual discovery of hypertension in January, 1979," the Director points out that respondent "accepted him for the job." This is a new high in circuitous reasoning that would destroy the whole statute.

Equally unsound is the Director's argument that Fantucchio "was in no way impaired in his ability to work." Hypertension is a disease, in fact found by the second ALJ to have been a contributing cause to Fantucchio's ultimate injury.[3] While there must be a "physical impairment," in the sense of a recognizable condition, *General Dynamics Corp. v. Sacchetti*, 681 F.2d 37, 40 (1st Cir.1982), the statute speaks only in terms of this, and not of work impairment in the economic sense.[4] Otherwise, its purpose to liberalize employment decisions and encourage employers to disregard physical ailments would be greatly diminished. *Universal Terminal & Stevedoring*, ante, 575 F.2d at 455–56; *C & P Telephone Co.*, ante, 564 F.2d at 512–13; *Equitable Equip. Co. v. Hardy*, 558 F.2d 1192, 1196–98 (5th Cir.1977); *Atlantic & Gulf Stevedores*, ante, 542 F.2d at 608–09. To hold that, where an employee at the time of employment had significantly elevated blood pressure, and had stated he had been told he had high blood pressure before, there was no substantial evidence—not to mention 'no evidence'—of disability would be to defeat the very purpose of the statute, to the detriment of workers with health hazards as a whole.

*Affirmed.*

---

**2.** Even 138/84 was high enough to cause a subsequent interim employer, Greyhound Lines, Inc., which did not have the protection of the statute, to postpone hiring until two other tests showed abatement. The Director would have it that "after his *elevated blood pressure* reading in 1974, he had two normal readings, and, *thus, no evidence* of either elevated blood pressure or hypertension." (Emphasis suppl.). There was no medical testimony supporting this legerdemain. The medical evidence, indeed common knowledge, is that blood pressure fluctuates. The question is whether it fluctuates too high. We could agree that there are degrees of hypertension, and that this single, only relatively elevated, episode might be explainable, but that is not this case.

**3.** "[T]here is ample evidence that Claimant's uncontrolled hypertension did coalesce to the occurrence of the heart attack, and with the infarction itself, so as to contribute to his 'ultimate degree of permanant disability.'" This finding was corroborated by the fact that Fantucchio was the only employee suffering substantial consequences of the exposure, and was accepted by the Board.

**4.** The Director's argument, that Fantucchio "was in no way impaired in his ability to work" is off the point. Nor was there evidence that the absence of medical treatment, of which he makes much, negatived presence of the condition.