812 F.2d 33
 Scott L. WHITE and Director, Office of Workers' Compensation
Programs, U.S. Department of Labor, Respondents,
v.
BATH IRON WORKS CORPORATION and Commercial Union Insurance
Company, Petitioners.
 No. 86-1702.
 United States Court of Appeals,
First Circuit.
 Argued Jan. 9, 1987.
Decided Feb. 26, 1987.
 
 Robert W. Bower, Jr., with whom Stephen Hessert and Norman, Hanson & DeTroy, Portland, Me., were on brief, for petitioners.
 Jeffrey T. Cohen, with whom Joseph E. Slater and McTeague, Higbee, Libner, Reitman, MacAdam & Case, Brunswick, Me., were on brief, for Scott L. White.
 Samuel J. Oshinsky, U.S. Dept. of Labor, Office of the Solicitor, with whom George R. Salem, Sol. of Labor, and Donald S. Shire, Associate Sol., Washington, D.C., were on brief, for Director, Office of Workers' Compensation Programs.
 Before BOWNES, Circuit Judge, ALDRICH, Senior Circuit Judge, and GIGNOUX,* Senior District Judge.
 BAILEY ALDRICH, Senior Circuit Judge.
 
 
 1
 This is an action for Longshore and Harbor Workers' Compensation benefits in which the Benefits Review Board affirmed an ALJ's decision and order in favor of the claimant. Petitioner for review, Bath Iron Works Corporation,[1] does not contest the finding of permanent partial disability due to a work-related injury to claimant's back, but disputes the amount of the award. It further contends that its liability should be limited in accordance with section 8(f) of the Act, 33 U.S.C. Sec. 908(f). We affirm.
 
 
 2
 Claimant White, on August 26, 1976, by pulling on a ventilation tube, brought into play a previously unsuspected spinal defect, spondylolisthesis, that will never be fully remedied.[2] At the time he was a welder, and the injury permanently disqualified him from heavy labor. When he was able to return to work in October 1980 petitioner employed him as a technical planner, a position that he has competently filled ever since.
 
 
 3
 In August 1976 claimant, as a first-class welder, was earning $5.30 an hour. Planners were earning $4.72 to $5.27. In October 1980 welders were earning $8.15 an hour; planners, $6.01, $8.09, or $10.17. Claimant's starting wage as a planner was $8.15. His pay was soon reduced, and since then, though he has received increases, he has consistently been paid less than welders. The question is how much claimant should be reimbursed for this loss, it being common ground that it should be a fixed amount, not to vary from month to month to follow current discrepancies.
 
 
 4
 Although Congress speaks generally of lost "wage-earning capacity," 33 U.S.C. Sec. 908(c)(21), it has provided no exact formula.[3] The ALJ discussed several "viable methods." He settled on the difference between claimant's wages in August 1976, $5.30, and what a beginning planner was then receiving, $4.72, taking the lowest figure because of claimant's "lack of clerical experience." We can see some unfairness in taking the beginner's planner wage as a permanent figure, particularly in light of the finding that claimant had "intellectual capacity for many jobs and a strong aptitude for clerical work." But we can also see, as did the ALJ, difficulties with other "viable methods."
 
 
 5
 Happily, even if, under other circumstances, it might be open to us to choose what seems the fairest figure, we are not faced with that question. The one solution we are sure is wrong is the single one sought by petitioner:
 
 
 6
 The administrative agency must compare an employee's post-injury actual earnings to the average weekly wage of the employee's time of injury.[4]
 
 
 7
 Translating, this would mean, if a welder, at the time of his injury, was being paid $6 an hour, and a gateman $3, and, when he returned to work, he was limited to being a gateman, but wages for both occupations had doubled, petitioner would say he suffered no lost earning capacity because he was still earning $6, even though, if he had returned as a welder, he would have been earning $12. It is difficult to think that petitioner advances this contention seriously. We cannot accept it.[5]
 
 
 8
 Turning to section 8(f), this section "was designed to encourage employers to hire or continue to employ handicapped workers by ensuring that the employer would not have to compensate in full for a subsequently incurred permanent disability when that disability was attributable in part to a previously existing handicap." General Dynamics Corp. v. Sacchetti, 681 F.2d 37, 40 (1st Cir.1982) (citing Director, Office of Workers' Compensation Programs v. Potomac Electric Power Co., 607 F.2d 1378, 1382 (D.C.Cir.1979) (per curiam)); see also Director, Office of Workers' Compensation Programs v. General Dynamics Corp. (Fantucchio), 787 F.2d 723, 724-25 (1st Cir.1986). The courts have accordingly construed it to apply only to situations in which the existing disability is "manifest," and therefore capable of causing or supporting discrimination against disabled workers. Strictly speaking, such discrimination can occur only when the employer is actually aware of the worker's disability. Nevertheless, regardless of the employer's actual knowledge, a condition has been considered "manifest" if it was diagnosed and identified in medical records available to the employer. See, e.g., Director, Office of Workers' Compensation Programs v. Universal Terminal & Stevedoring Corp., 575 F.2d 452, 456-57 (3d Cir.1978); Director, Office of Workers' Compensation Programs v. Brandt Airflex Corp., 645 F.2d 1053, 1061-62 (D.C.Cir.1981). This approach recognizes the "practical difficulties in application" of a rule requiring proof of the employer's actual knowledge, American Mutual Insurance Co. v. Jones, 426 F.2d 1263, 1267 (D.C.Cir.1970), and avoids disputes as to the employer's awareness of, or the actual consideration given to, a particular medical record or other evidence of an existing disability. Petitioner asks that we extend this rule to what could have been found by an unperformed diagnostic examination of the prospective employee, that is, to read "manifest" as "discoverable."
 
 
 9
 We decline petitioner's invitation. Accord Lambert's Point Docks, Inc. v. Harris, 718 F.2d 644, 648 (4th Cir.1983); cf. Director, Office of Workers' Compensation Programs v. Campbell Industries, 678 F.2d 836, 840-41 (9th Cir.1982), cert. denied, 459 U.S. 1104, 103 S.Ct. 726, 74 L.Ed.2d 951 (1983). Adopting a rule based on discoverability would virtually eliminate the purpose of the courts' long-standing and widely observed requirement that the preexisting disability contemplated under section 8(f) be "manifest." In support of this drastic change, petitioner argues that the current rule "encourage[s] [employers] to set up pre-employment medical and physical examinations to screen out applicants with latent, but discoverable pre-existing disability." Similar concerns were expressed by the court in Director, Office of Workers' Compensation Programs v. Brandt Airflex Corp., 645 F.2d 1053, 1062 (D.C.Cir.1981). We are not troubled. If this objection means that workers who prove to be healthy are subjected to unnecessary examinations, we cannot view that as serious harm. If it means that workers believed to be healthy are found not to be, we do not believe it was the Congressional purpose to keep such matters undisclosed so that those with hidden problems would slip by. A rule that all disabilities identified in an employee's medical records are "manifest" leads to a practical application of the statute. A rule that all medically discoverable disabilities are to be included would go far beyond it.
 
 
 10
 Affirmed.
 
 
 
 *
 Of the District of Maine, sitting by designation
 
 
 [1]
 We are not separately concerned with the insurer, also a petitioner
 
 
 [2]
 According to the medical testimony, the workplace injury was "superimposed on this underlying quiescent or symptom-free defect."
 
 
 [3]
 (21) Other cases: In all other cases in the class of disability, the compensation shall be 66 2/3 per centum of the difference between the average weekly wages of the employee and the employee's wage-earning capacity thereafter in the same employment or otherwise, payable during the continuance of partial disability
 
 
 [4]
 Petitioner, citing Bethard v. Sun Shipbuilding & Drydock Co., 12 B.R.B.S. 691 (1980), and Devillier v. National Steel & Shipbuilding Co., 10 B.R.B.S. 649 (1979), argues that the ALJ at least should have considered additional factors prior to concluding that claimant's current wages were unrepresentative of his earning capacity. We regard the ALJ's findings as adequate for the simple adjustment discussed in this opinion. In challenging this adjustment, petitioner has not argued that claimant's position as a planner is unrepresentative of his post-injury earning capacity in the open market. Cf. Randall v. Comfort Control, Inc., 725 F.2d 791 (D.C.Cir.1984)
 
 
 [5]
 For other discussions see Walker v. Washington Metropolitan Area Transit Authority, 793 F.2d 319, 323 n. 5 (D.C.Cir.1986), petition for cert. filed, --- U.S. ----, 107 S.Ct. 1308, 94 L.Ed.2d 162 (1986); McCabe v. Sun Shipbuilding & Dry Dock Co., 602 F.2d 59, 63 (3d Cir.1979). Cf. Bath Iron Works Corp. v. White, 584 F.2d 569, 575 (1st Cir.1978)