**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Petitioner,**

v.

**GENERAL DYNAMICS CORPORATION, Employer, Respondent,**

**and**

**Harold Lockhart, Claimant, Respondent.**

No. 91–2071.

United States Court of Appeals, First Circuit.

Heard April 10, 1992.

Decided Nov. 30, 1992.

---

Mark A. Reinhalter with whom Marshall J. Breger, Sol. of Labor, Carol A. De Deo, Associate Sol., Janet R. Dunlop, Counsel for Longshore, and Carol B. Feinberg, Dept. of Labor, Office of the Sol., Washington, D.C., were on brief, for petitioner.

Norman P. Beane, Jr., with whom Edward J. Murphy, Jr., and Murphy & Beane, Boston, Mass., were on brief, for employer-respondent.

Before SELYA, Circuit Judge, CAMPBELL, Senior Circuit Judge, and KEETON,* District Judge.

LEVIN H. CAMPBELL, Senior Circuit Judge.

This petition for review involves a claim by co-respondent Harold Lockhart for disability compensation under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq.* ("the Act"). The Benefits Review Board ("the Board") rejected the contention of petitioner, who is the Director of the Office of Workers' Compensation Programs ("the Director"), that co-respondent General Dynamics Corporation, Lockhart's former employer, did not qualify for limited liability under section 8(f) of the Act ("Section 8(f)"). *See* 33 U.S.C. § 908(f)(1).

In his petition for review of the Board's final order, the Director raises only one issue: whether the Board erred in holding that the permanency of an employee's prior disability need not have been initially "manifest" to the employer in order for the employer to qualify for Section 8(f) relief. This court has jurisdiction to hear the petition under 33 U.S.C. § 921(c).

## I. FACTUAL BACKGROUND

Harold Lockhart worked as a heavy duty carpenter for General Dynamics ("the Company") at its Quincy, Massachusetts, shipyard. On the job on March 27, 1978, he experienced severe pain in his back while attempting to lift a plank weighing over 300 pounds. He reported the injury to his foreman and was examined the next morning by a General Dynamics physician at the shipyard clinic. The physician initially diagnosed Lockhart's problem as muscle spasms and recommended that he take a few days off to rest at home.

On April 5, Lockhart returned to the shipyard, but was still experiencing pain in

* Of the District of Massachusetts, sitting by designation.

his back and legs. A company physician examined Lockhart's back and filed a company medical report which stated: "Back is sore. Taking it easy at home." The next day, April 6, Lockhart was again examined by the company physician who, on an "Attending Physician's Report," declared Lockhart to be "disabled" and noted that his "range of motion [is] restricted and painful, all localized into [the left] hip." Also on April 6, another form was completed which described how Lockhart injured his back while lifting a plank. The physician wrote "deferred" in a blank space on the form which asked for a description of the nature of the injury. X-rays of Lockhart's back ordered by the company doctor eventually came back with "negative" results.

Eleven days later on April 17, 1978, Lockhart was again examined by the General Dynamics physician because his back still hurt. The physician updated the Attending Physician's Report, noting the "negative" results of certain tests, stating that Lockhart was still "disabled," and offering a new diagnosis of "resolving acute LS [lumbosacral] spine." The doctor also checked various boxes on the form to indicate that it was unknown when Lockhart would be able to return to work, but that, in his opinion, there would be no "permanent defect, or facial or head disfigurement."

Sometime around April 25, 1978, the Company authorized Lockhart to return to his job without any restrictions on his duties. However, when he reported for work Lockhart informed his supervisor that his back and leg still hurt. The supervisor agreed to restrict him to light duty work, which consisted of the supervision of other carpenters without any lifting or physical exertion. There is no evidence that anyone at General Dynamics above Lockhart's immediate supervisor knew of the light duty assignment.

Despite the light duty assignment, Lockhart injured his back again on May 1, 1978. He had been called in to work overtime and perform heavy duty carpentry work on a ship. While attempting to lift another heavy plank, Lockhart felt a sharp pain in his back and had to be carried off the boat by his fellow workers. He was hospitalized and eventually diagnosed as having a ruptured disk in his spine. Surgery and other treatment were generally unsuccessful, leaving Lockhart with limited mobility. He never returned to his job at General Dynamics.

## II. PROCEDURAL HISTORY

This case began fourteen years ago when Lockhart filed a claim for compensation under the Longshore and Harbor Workers' Compensation Act, alleging that he was totally and permanently disabled. *See* 33 U.S.C. § 901 *et seq.* General Dynamics controverted the claim and also argued that its own liability should, in any event, be limited to 104 weeks of payments under Section 8(f) of the Act. *See* 33 U.S.C. § 908(f).

▉ Under the Act, an employer must pay an employee compensation for his permanent total disability. *See* 33 U.S.C. § 908(a). Section 8(f) of the Act limits the employer's liability to 104 weeks of payments in cases in which an employee having an existing permanent partial disability suffers a second injury which renders him totally disabled. *See* 33 U.S.C. § 908(f)(1); *CNA Ins. Co. v. Legrow*, 935 F.2d 430, 435 (1st Cir.1991). To prove that it is entitled to Section 8(f) relief, an employer must show that, (1) the employee had a permanent partial disability that existed prior to the second injury; (2) the second injury contributed to that disability; and (3) the prior disability was "manifest" to the employer. *See General Dynamics Corp. v. Sacchetti*, 681 F.2d 37, 39–40 (1st Cir.1982). That the prior disability was manifest is not a requirement appearing in the statutory text, but rather is one the courts have implied, taking into account the history and purpose of Section 8(f). *See White v. Bath Iron Works Corp.*, 812 F.2d 33, 35 (1st Cir.1987). If an employer qualifies for Section 8(f) relief, after two years the disability payments are made by the government out of a special fund which is administered by the petitioner, the Director of the Office

of Workers' Compensation Programs. *See* 33 U.S.C. §§ 908(f)(2)(A), 944; 20 C.F.R. §§ 701.201, 701.202; *Legrow*, 935 F.2d at 435.

After a formal hearing in 1984, an administrative law judge ("ALJ") found that Lockhart was totally and permanently disabled, and awarded him benefits to be paid by General Dynamics. The ALJ rejected General Dynamics's claim that it was entitled to relief under Section 8(f). The ALJ held that Section 8(f) did not apply because, among other reasons, General Dynamics failed to satisfy the manifest requirement. Though the employer had known about Lockhart's first injury, "the *permanent nature* of the March 27, 1978 injury was [not] manifest to the Employer before May 1, 1978 [the time of the second injury]." (Emphasis added).

On February 24, 1988, the Benefits Review Board ruled on an appeal brought by General Dynamics, affirming the ALJ's decision that Lockhart was entitled to disability benefits, but reversing in part and vacating in part the ALJ's holding that General Dynamics was not entitled to Section 8(f) relief. With regard to the manifest requirement, the Board stated that

> The administrative law judge determined that the *permanent* nature of the first injury was not manifest to the employer. This conclusion is also flawed by the administrative law judge's use of the wrong standard in determining whether claimant had a pre-existing permanent partial disability.... The medical records need not indicate the severity or the precise nature of the pre-existing condition for it to be manifest, so long as there is sufficient information regarding the existence of a serious lasting problem which would motivate a cautious employer to consider terminating the employee because of the risk of compensation liability.

(citing Board precedent) (emphasis in original). Among other issues, the Board vacated and remanded the case to the ALJ for a new finding as to whether Lockhart's preexisting disability was manifest to General Dynamics before the second injury.

Because the original ALJ had retired by the time the Board remanded the case in 1988, a different ALJ reconsidered the case in light of the Board's decision. On January 11, 1989, the second ALJ ruled that General Dynamics had met all of Section 8(f)'s requirements, including the manifest requirement. The ALJ found that the prior disability was manifest because the Company had "sufficient information regarding the existence of a serious lasting problem which would motivate a cautious employer [to consider terminating Lockhart] because of the risk of compensation liability."

The Director, who by this stage had joined the action as a party-in-interest, moved for reconsideration, arguing that the manifest requirement was unfulfilled because General Dynamics did not have sufficient information prior to the second injury that the prior disability, caused by the March 27 accident, was permanent. The ALJ rejected the Director's motion on March 28, 1989, reiterating that "the full ramifications of a condition need not be determinable" to fulfill the manifest requirement.

Finally, on August 29, 1991, the Board rejected the Director's appeal and affirmed the ALJ's decision, stressing again that "the permanency of a pre-existing condition need not be manifest prior to the claimant's second injury for the condition to support an award of Section 8(f) relief." The Director now petitions for review of the Board's final order, contending that the Board's statement of the law on the manifest requirement is reversible error.

### III. STANDARD OF REVIEW

■ Reversal of the ALJ by the Board is warranted only if either the ALJ's findings of fact are unsupported by substantial evidence in the record considered as a whole, or if the decision is contrary to law. 33 U.S.C. § 921(b)(3); *Legrow*, 935 F.2d at 433. The only issue before us is the Board's decision to reverse the first ALJ's ruling of law that the manifest requirement is fulfilled only if the permanent nature of a disability is itself manifest. Our

review of the case, therefore, requires only that we determine the legal correctness of the Board's conclusions. Because the Board is not a policy-making agency, the Supreme Court has indicated that the Board's interpretation of the applicable law is not entitled to any special deference from the courts. *See Potomac Elec. Power Co. v. Director, Office of Workers' Compensation Programs*, 449 U.S. 268, 278 n. 18, 101 S.Ct. 509, 514 n. 18, 66 L.Ed.2d 446 (1980); *but see Estate of Cowart v. Nicklos Drilling Co.*, — U.S. —, —, 112 S.Ct. 2589, 2595, 120 L.Ed.2d 379 (1992) (describing deference to Board as a "difficult issue[ ]").[1] Neither party, in fact, argues for special deference to the Board.

■ The Director, however, argues that we must defer to *his* construction of Section 8(f) because the Office of Workers' Compensation Programs is the agency authorized to administer the Act. *See* 20 C.F.R. § 701.202. The Director contends that, under the principles of deference articulated in *Pauley v. BethEnergy Mines, Inc.*, — U.S. —, 111 S.Ct. 2524, 115 L.Ed.2d 604 (1991), this Court must accept his interpretation of the manifest requirement unless it is unreasonable or contrary to the purposes of the statute, or contrary to clearly expressed legislative intent. *See id.* at —, 111 S.Ct. at 2534 (stating that courts should defer "to an agency's interpretation of ambiguous provisions of the statutes it is authorized to implement").

This court recently stated in *Liberty Mutual Ins. Co. v. Commercial Union Ins. Co.*, 978 F.2d 750 (1st Cir.1992), that it has yet to decide whether to extend deference to the Director's interpretation of the Act.

*Id.* at 757. Other circuits are split on whether and under what circumstances to accord deference to the Director. *Id.* at 757 (reviewing circuit positions on deference); *Director, Office of Workers' Compensation Programs v. General Dynamics Corp. (Krotsis)*, 900 F.2d 506, 510 (2d Cir.1990) (same).

We again refrain from deciding whether deference is due to the Director's interpretation of the Act because in this case "[t]he Director's position concerns merely his interpretation of the case law, not his interpretation of the controlling statute." *Liberty Mutual*, 978 F.2d at 757. The manifest requirement at issue is a judicially-created doctrine, developed by the courts as a "judicial gloss" on the Act. *American Ship Bldg. Co. v. Director, Office of Workers' Compensation Programs*, 865 F.2d 727, 730–32 (6th Cir.1989) (reviewing the history of the manifest requirement); *Director, Office of Workers' Compensation Programs v. Brandt Airflex Corp.*, 645 F.2d 1053, 1059 (D.C.Cir.1981). The text of Section 8(f) contains no reference to the manifest requirement. *See* 33 U.S.C. § 908(f). The Labor Department regulations implementing Section 8(f) do not specify what employers must demonstrate to fulfill the manifest requirement. *See* 20 C.F.R. § 702.145(b) (making no mention of the manifest requirement); 20 C.F.R. § 702.321 (stating only that an applicant for Section 8(f) relief should describe "the basis for the assertion that the pre-existing condition relied upon was manifest to the employer"). In his brief, the Director argues only that the case law of this and other circuits support his version of the manifest requirement.[2] The Director has

---

1. This court has previously indicated some willingness to defer to the Board. "[E]ven though [an] issue may be looked upon as largely legal in nature, a reviewing court should accord the Board's interpretation considerable deference." *General Dynamics Corp. v. Sacchetti*, 681 F.2d 37, 38 (1st Cir.1982). "And even when the issue involves the 'application of a broad statutory term or phrase to a specific set of facts,' the Board's decision will be affirmed so long as it has a 'reasonable legal basis.'" *Bath Iron Works Corp. v. White*, 584 F.2d 569, 574 (1st Cir.1978). We need not attempt to determine to what extent, if any, these views can stand in light of the cited opinions of the Supreme Court. Even if

deferring to the Board could somehow be squared with the Court's pronouncements, no deference would be due to the Board's determination *in this case.* As explained *infra*, this case does not involve the Board's interpretation of the Act, but only of the judicially-created doctrine of manifest disability.

2. The sole reference in the Director's brief to the text of the statute is a conclusory statement that because the word "permanent" appears in Section 8(f), the permanent nature of a disability must be manifest to an employer to qualify for limited liability. This point is neither developed

no special expertise nor Congressional grant of authority to interpret case law. "It is nonsense to suggest that a federal court must defer to an administrative agency in determining the meaning and applicability of the court's own precedent." *Liberty Mutual*, 978 F.2d at 757.

In addition, the Director takes his position as a litigating party, not in support of his rule-making capacity. Generally, agency positions raised adversarially for the first time in the course of litigation are not owed deference. *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 212, 109 S.Ct. 468, 473, 102 L.Ed.2d 493 (1988) ("We have never applied the principle of [*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)] to agency litigating positions that are wholly unsupported by regulations, rulings, or administrative practice."); *see also Martin v. Occupational Safety & Health Review Comm'n*, —— U.S. ——, ——, 111 S.Ct. 1171, 1179, 113 L.Ed.2d 117 (1991) (distinguishing an agency's litigating positions from an agency's delegated lawmaking powers). The Supreme Court recently questioned whether the Director should be accorded deference for a position raised for the first time in litigation. *See Estate of Cowart*, —— U.S. at —— – ——, 112 S.Ct. at 2594–95.

The Director fulfills various functions in the administration of the Act, including promulgating rules and regulations implementing the Act, *see* 33 U.S.C. § 939(a), and administering the special fund· from which Section 8(f) payments are made to disabled employees, *see* 33 U.S.C. § 944. *See also* 20 C.F.R. § 701.202 (transferring Secretary of Labor's authority over the Act to the Director); *Ingalls Shipbuilding Div. v. White*, 681 F.2d 275, 286 (5th Cir.1982) (summarizing the Director's diverse duties in "implementing, administering and enforcing" the Act). The principle of deference to agency interpretation of statutes is rooted in the notion that the agency in its policy-making capacity is better able than the courts to balance the various competing interests affected by such interpretation. *Pauley*, —— U.S. at ——, 111 S.Ct. at 2534; *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984). However, the Director's position in this case is not one that was developed in the course of formal or informal agency proceedings. Rather, it most clearly reflects his official responsibility to protect the fund's financial health—a narrowly defined, somewhat adversarial role unlike the more formal and neutral policy-making capacity to which courts generally defer. *See Director, Office of Workers' Compensation Programs v. General Dynamics Corp. (Krotsis)*, 900 F.2d 506, 510 (2d Cir.1990) (refusing to defer to the Director because his "position has not been articulated in a more objective context through the promulgation of regulations" and because the Director was in an "adversarial position in this litigation"); *Director, Office of Workers' Compensation Programs v. Mangifest*, 826 F.2d 1318, 1324 (3d Cir.1987); *see also Martin*, —— U.S. at ——, 111 S.Ct. at 1179 (explaining that less deference is due to agency positions developed in informal proceedings or litigation than to the results of formal rule-making); *Equal Employment Opportunity Comm'n v. Arabian American Oil Co.*, —— U.S. ——, ——, 111 S.Ct. 1227, 1235, 113 L.Ed.2d 274 (1991) (deciding that the deference due to EEOC guidelines, in contrast to agencies' rules and regulations, depends on the guidelines' "thoroughness," "reasoning," "consistency," and their overall "power to persuade"); *cf. Williams Bros., Inc. v. Pate*, 833 F.2d 261, 265 (11th Cir.1987) ("Common sense tells us that if deference were always to be given to the Director's litigating position, then claimants would be effectively denied the right to appellate review."). *But see Arabian American Oil Co.*, —— U.S. at ——, 111 S.Ct. at 1236 (Scalia, J., concurring in part and concurring in the judgment) (writing that the " 'legislative rules vs. other action'

nor relied upon in the rest of the Director's brief. Except for this off-hand reference to the statute, the Director's position is supported only by his.interpretation of case law.

dichotomy is an anachronism" after *Chevron* ).

In any event, as the Director's position does not involve the textual interpretation either of the Act or of regulations promulgated under the Act, but rather is based upon an interpretation of judge-made case law, we accord no special deference to his views.

## IV. DISCUSSION

In his appeal before the Board, the Director conceded that virtually all of the requirements for Section 8(f) relief are satisfied in this case: that is, prior to May 1, 1978 (the date of the second injury), Lockhart had suffered from what was, in fact, a permanent partial disability; his second back injury combined with his preexisting disability to render him totally disabled; General Dynamics knew that Lockhart injured his back on March 27, 1978; and General Dynamics had sufficient information prior to May 1, 1978 about the March 27 back injury to know that it disabled Lockhart. The Director's only contention before the ALJ, the Board, and this court, is that the information possessed by General Dynamics prior to the second injury did not establish that Lockhart's disability was permanent rather than temporary. The Company's physicians did not expressly diagnose Lockhart, at the time of the first injury, as permanently disabled, nor was it determined then that his back pain was caused by a ruptured disk. Because the *permanent nature* of the prior disability was not then manifest, the Director reasons, the Company failed to satisfy the manifest requirement altogether, and thus should not have been awarded Section 8(f) relief. The Board rejected this argument and reaffirmed its statement that:

> The medical records need not indicate the severity or the precise nature of the preexisting condition for it to be manifest, so long as there is sufficient information regarding the existence of a serious lasting problem which would motivate a cautious employer to consider terminating the employee because of the risk of compensation liability.

The Director argues that this version of the manifest requirement misstates the law.

Before deciding whether the Board erred in so construing the manifest requirement, we must clarify exactly what it held. We disagree with the Director that the Board's formulation means that an employer who had every reason to believe a claimant's preexisting condition would resolve, and no reason to believe that it was permanent, will nonetheless be permitted to reap the benefit of Section 8(f). The Director makes the faulty assumption that an employer can know only one of two things: either that the disability is permanent, or else that it is temporary.

A disability is, to be sure, either temporary or permanent. *Palombo v. Director, Office of Workers' Compensation Programs*, 937 F.2d 70, 76 (2d Cir.1991); *Director, Office of Workers' Compensation Programs v. Berkstresser*, 921 F.2d 306, 312 (D.C.Cir.1990). However, the amount of information an employer possesses at the early stage of an employee's disability may vary along a continuum. Where a worker suffers an injury, the employer could at the relevant earlier time: (1) have *no* information as to existence of an active disability; (2) know that some disability exists, but believe, incorrectly, as it may turn out, that the disability is merely *temporary;* (3) know that some disability exists, but be *uncertain* as to the nature or duration of the disability; or (4) know that some disability exists and understand that the disability is *permanent.* (Of course, the employer's own actual knowledge of the disability is not required. Adequate medical records reflecting the nature of the disability will suffice to show what was known at the relevant time. *White v. Bath Iron Works Corp.*, 812 F.2d 33, 35 (1st Cir.1987)).

We construe the Board's statement as excluding (1) and (2). There has to be "sufficient information regarding the existence of a serious lasting problem which would motivate a cautious employer to consider terminating the employee because of the risk of compensation liability." This standard would not be met if the injury appeared to be merely temporary. Only if apparently permanent, or else so lasting

and serious as to cause cautious employers to consider terminating, does the injury meet the Board's requirement. While the latter standard does not call for absolute certainty as to permanency, the "serious lasting" language calls for an injury of substantial duration and consequence, such as might lead a cautious employer to terminate. An injury of that description carries, at least, some apparent risk of permanency. This court has said, "To be considered permanent, a disability need not be 'eternal or everlasting;' it is sufficient that the 'condition has continued for a lengthy period, and it appears to be of *lasting or indefinite* duration, as distinguished from one in which recovery merely awaits a normal healing period.'" *Air America, Inc. v. Director, Office of Workers' Compensation Programs*, 597 F.2d 773, 781 (1st Cir. 1979) (emphasis added) (citation omitted).

■ We turn next to whether a standard of this nature is legally correct. No court has squarely confronted the question posed by the Director in this case, so we must examine the Board's standard in light of the purpose of the manifest requirement. The manifest requirement was developed by the courts to further the Congressional purpose underlying Section 8(f): to discourage discrimination against handicapped workers "by ensuring that the employer would not have to compensate in full for a subsequently incurred permanent disability when that disability was attributable in part to a previously existing handicap." *CNA Ins. Co. v. Legrow*, 935 F.2d 430, 435–36 (1st Cir.1991) (quoting *General Dynamics Corp. v. Sacchetti*, 681 F.2d 37, 40 (1st Cir.1982)); *White v. Bath Iron Works Corp.*, 812 F.2d at 35. The courts reasoned that Section 8(f) should apply only to situations in which the existing disability is manifest, and therefore capable of causing or supporting discrimination against disabled workers. *White v. Bath Iron Works Corp.*, 812 F.2d at 35. An employer who has no idea that a worker is disabled has no incentive to discriminate against him on the basis of that disability, and thus the disability is not considered manifest. *See id.*

The manifest requirement and the other requirements of Section 8(f) have been expressed in various forms in our decisions. In *White v. Bath Iron Works Corp.* we wrote that:

> The courts have accordingly construed [Section 8(f)] to apply only to situations in which the existing disability is "manifest," and therefore capable of causing or supporting discrimination against disabled workers.... [R]egardless of the employer's actual knowledge, a condition has been considered "manifest" if it was diagnosed and identified in medical records available to the employer.

812 F.2d at 35. In *CNA Insurance Co. v. Legrow*, we explained that:

> Section 8(f) first requires the employer to prove that the claimant had a manifest permanent partial disability prior to the accident which, in combination, caused the claimant permanent total disability. Stated differently, the employer must show that the disability is serious enough to motivate a cautious employer either not to hire or to fire employee because of the "greatly increased risk of employment-related accident and compensation liability."

935 F.2d at 435 (quoting *C & P Tel. Co. v. Director, Office of Workers Compensation Programs*, 564 F.2d 503, 510 (D.C.Cir. 1977)). While the Board's decision did not employ the exact language used in our previous opinions to describe the manifest requirement, it properly focused on the crucial issue, which is the potential for discrimination against the disabled. The centrality of this issue is emphasized in all our cases interpreting the Act in this context. In *General Dynamics Corp. v. Sacchetti*, 681 F.2d 37 (1st Cir.1982), where this Court first adopted the manifest requirement, we emphasized that an applicant for Section 8(f) relief must show that "a cautious employer would have been moved to discharge [the employee] because of the increased risks of disability illness and resultant compensation liability." *Id.* at 40. Similarly, in *Director, Office of Workers' Compensation Programs v. General Dynamics Corp. (Fantucchio)*, 787 F.2d 723 (1st Cir. 1986), we rejected a narrow interpretation

of the Act advocated by the Director and ruled that an employee's hypertension was a "disability" even though it did not prevent him from working. "The question [ ] is whether it was of sufficient consequence to fall within the statutory purpose, whether it was such that, absent the statutory protection, a cautious employer might well hesitate to hire him." *Fantucchio*, 787 F.2d at 724.

The language of the Board's standard is identical to that of another case which explored the scope of the manifest requirement. In *Director, Office of Workers' Compensation Programs v. Berkstresser*, 921 F.2d 306 (D.C.Cir.1990), the court rejected the Director's argument that "what must be manifest to the employer is the existence of a permanent partial disability, i.e., a serious condition that *actually impairs* the employee." *Id.* at 310 (emphasis added). The *Berkstresser* court reasoned that because "disability" under the Act is not limited to economically disabling conditions, neither should the manifest requirement be limited to cases where the employee is actually prevented from performing some aspect of his job:

> As we have previously held,
> ... "Disability" under new § 8(f) is necessarily of sufficient breadth to encompass those cases, like that before us, wherein the employee had such a serious physical disability in fact that a cautious employer would have been motivated to discharge the handicapped employee because of a greatly increased risk of employment-related accident and compensation liability.

*C & P Telephone Co. v. Director, Office of Workers' Compensation Programs*, 564 F.2d 503, 513 (D.C.Cir.1977). This broad definition of "disability" governs the manifest requirement under § 8(f). When the evidence shows that such a "disability" was objectively apparent, the "manifest" requirement has been met. Thus, contrary to the Director's contention, the manifest condition need not be "a serious condition that actually impairs the employee" at the time of hiring or retention; an asymptomatic disability may be sufficient to motivate an employ-

ment decision and fulfill the "manifest" requirement.

*Berkstresser*, 921 F.2d at 310. The "proper touchstone" for the manifest requirement, the court explained, is "whether the condition puts the employer on notice of greatly increased liability and thus creates a risk of discrimination." *Id.* The court concluded that "the appropriate legal standard for manifestation requires a showing of objective evidence of a serious disabling condition that would motivate the 'cautious employer ... to discharge the [ ] employee because of a greatly increased risk' of liability." *Id.* (quoting *C & P Telephone*, 564 F.2d at 513).

These cases and the Board's standard in Lockhart's case all rely on the original rationale for creating the manifest requirement. In the seminal case on the issue, *American Mutual Insurance Co. v. Jones*, the court wrote that:

> [Section] 8(f)(1) does not apply to every case of permanent total disability in which a present injury is not the sole cause of the disability. It was not intended to provide a windfall to employers, nor to actively encourage employment of the handicapped. Its purpose was simply to remove that aspect of discrimination against the disabled which would otherwise be encouraged by the very statute intended to protect them. Any such discrimination, however, must rest upon knowledge of the characteristic upon which the discrimination is to be based. In consequence, courts have distinguished between "manifest" and "latent" conditions for purposes of apportioning claims between employers and special funds such as the present one.

*American Mutual Ins. Co. v. Jones*, 426 F.2d 1263, 1267 (D.C.Cir.1970).

In summary, we find no error in the Board's standard. It effectuates the purpose of the manifest requirement and Section 8(f) by making only potential discriminators eligible for Section 8(f) relief. The Board's test properly denies Section 8(f) relief to those employers who know little or nothing about the disability or incorrectly

believe the disability to be merely temporary. At the other end, it finds that the disability is manifest to those employers who know that the disability is permanent or who are uncertain, but have objective evidence of a serious lasting problem that would motivate a cautious employer to discharge the employee because of a greatly increased risk of liability.

The Director proposes that we adopt the first ALJ's holding that the manifest requirement is not fulfilled when an employer does not know with absolute certainty that the disability is permanent. If we adopted this position, an employer would be required to know without a doubt, or have medical records conclusively indicating, that the disability was permanent. Such a rule would severely restrict the coverage of Section 8(f) and conflict with the purposes of the manifest requirement and of Section 8(f) itself. To deny limited liability to all employers who, at the early stage of a disabling injury, are not 100% certain that it will be permanent would exclude even those employers who have a strong incentive to discriminate. For example, under the Director's proposed rule an employer who knew that a worker had sustained a disabling knee injury and had substantial, but not yet conclusive, information that the knee condition was permanent would fail to meet the manifest requirement and thus be ineligible for Section 8(f) relief. However, the uncertain employer would have had as much a financial incentive to fire the worker with the weak knee as the employer who knew conclusively that the knee was permanently weakened. Awarding limited liability under Section 8(f) to the latter but denying it to the former would severely restrict the availability of Section 8(f) relief in a manner inconsistent with the purposes of the manifest requirement and Section 8(f). In many circumstances, it is impossible until years have passed to definitively determine whether an injury has caused permanent damage. *See Liberty Mutual,* 978 F.2d at 753 (explaining that it is "treacherous, highly speculative terrain" for a physician to make "a fairly exact prediction as to how the disease would progress in an individual case"). Under

the Director's rule, cautious employers might try to avoid retaining or hiring any workers with a history of prior injury. *See Director, Office of Workers' Compensation Programs v. Brandt Airflex Corp.,* 645 F.2d 1053, 1062 (D.C.Cir.1981). The consequence would be more, not less, discrimination against workers who had sustained possibly disabling injuries.

The Director suggests that a tightened rule would prevent windfalls to undeserving employers who know of no reason to discriminate against a disabled worker. We are not convinced that the Board's standard, if properly applied, will create windfalls. The Director's narrow rule would eliminate that small danger at the expense of handicapped workers.

> In locating the proper place of [a] factual situation within the framework of [court] precedents, ... we must remember that manifestness is a matter of degree, and we must not guard so zealously against windfalls that the explicit congressional intent to protect the handicapped worker is sacrificed to an auxiliary purpose elaborated by the courts.

*Brandt Airflex,* 645 F.2d at 1059.

We also reject the Director's argument that the terms "serious and lasting" used by the Board are too flexible and vague, and will result in Section 8(f) relief being granted to employers who have no reason to believe that a preexisting condition is permanent. As with any standard, especially in the field of disability compensation, the Board's version of the manifest requirement is not self-applying. However, as already discussed, the words "serious and lasting" are plainly not equivalent merely to "temporary." *See Air America, Inc. v. Director, Office of Workers' Compensation Programs,* 597 F.2d at 781 (permanent disability is "lasting or indefinite" and need not be "eternal or everlasting").

## V. CONCLUSION

The Director argues only that the Board's statement of the manifest requirement was an error of law. The Director does not argue that, assuming this stan-

dard to be correct, the record is without substantial evidence to support the Board's finding that Lockhart's disability was, under the standard as so articulated, manifest. Because we find no reversible error in the Board's formulation of the manifest requirement in this case, we deny the petition for review.

*Petition for review denied.*