**C.G. WILLIS, INC., and Aetna Casualty and Surety Co., Petitioners,**

v.

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, Respondent.**

No. 93–8397.

United States Court of Appeals, Eleventh Circuit.

Sept. 13, 1994.

Before BIRCH, Circuit Judge, RONEY and CLARK, Senior Circuit Judges.

CLARK, Senior Circuit Judge:

This case comes to us under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–950 ("the Act"). Claimant Gary Anderson was awarded benefits under the Act for a work-related back injury, which the administrative law judge ("ALJ") found to be a permanent total disability. Anderson's employer, petitioner C. G. Willis, Inc., and its insurer, petitioner Aetna Casualty and Surety Company, sought the protection of the "second injury" provision of section 8(f) of the Act, 33 U.S.C. § 908(f). This provision limits an employer's liability to 104 weeks of compensation if the employee had a preexisting permanent partial disability that was manifest to the employer and that contributed to the seriousness of the compensable injury. The ALJ found that Anderson's preexisting back condition had not been manifest to the employer and, therefore, concluded that § 908(f) was inapplicable. The Benefits Review Board affirmed. Petitioners do not contest the award of benefits to Anderson. They contest only the determination that relief under section 8(f) is not available to them. Because we find substantial evidence on the record to support the ALJ's finding that petitioners did not satisfy the manifest requirement, we affirm.

*FACTS AND PROCEEDINGS BELOW*

On March 20, 1978, Anderson injured his back while working as a longshoreman for petitioner C. G. Willis, Inc. After his injury, Anderson told his treating physicians that he had undergone back surgery, specifically, a laminectomy, in 1959. Anderson worked from 1959 through 1978 but is now unable to work due to the 1978 injury.

Anderson filed a claim for workers' compensation benefits under the Act. Petitioners responded by challenging the extent of Anderson's disability and by seeking to limit their liability pursuant to the "second injury" provision of section 8(f) of the Act, 33 U.S.C. § 908(f). At the hearing before the ALJ, petitioners did not submit any records pre-

John E. Houser, Thomasville, GA, for petitioners.

Lisa L. Lahrman, Clerk of the Bd., Benefits Review Bd., Michael S. Hertzig, U.S. Dept. of Labor, Office of the Sol., Washington, DC, for respondent.

dating Anderson's March 20, 1978 injury to substantiate his preexisting back condition.[1] Neither did petitioners contend that Anderson's employer was actually aware of the preexisting back condition prior to Anderson's March 20, 1978 injury. Rather, petitioners relied entirely upon a surgical scar on Anderson's back as proof that his preexisting back condition was "manifest" to his employer.

The ALJ found that Anderson's March 20, 1978 injury resulted in a permanent total disability and, therefore, that he was entitled to compensation.[2] As to petitioners' reliance on the "second injury" provision of 33 U.S.C. § 908(f), the ALJ found:

> The record reflects that Claimant stated that he had a laminectomy in Philadelphia, Pennsylvania, in 1959 and that thereafter he experienced occasional back stiffness and pain. He recited the same history to the various doctors and hospital personnel who examined him after the March 20, 1978 injury.
>
> Dr. Hudson testified that the 1959 injury would have warranted a permanent partial disability rating of probably 5 percent.
>
> I find that the pre-existing back injury and laminectomy resulted in Claimant having a permanent partial disability. I find also, based on the testimony of Drs. Hudson and McAuley that the March 20, 1978 injury combined with the pre-existing disability to cause a greater disability than Claimant would have incurred from the 1978 injury alone.
>
> However, I can find no basis to rule that the pre-existing disability was manifest to the Employer at the time Claimant was hired. There is no medical evidence of record, pre-dating March 20, 1978, indicating that Claimant had had back surgery. When I asked Employer's counsel for such medical documentation, he responded that

he had gotten some, but that it was so poor he had sent it back asking that it be deciphered. It only showed that Claimant had been in the hospital.

> The medical documentation of Claimant's surgery in 1959 is based entirely on his statements to the examining physicians. These reports were not in existence prior to March 20, 1978.
>
> Moreover, the fact that Claimant has a scar on his back would not have put the Employer on notice of prior surgery because the scar could have resulted from other causes and Claimant was not given a physical examination prior to employment.
>
> I conclude that the Employer did not know, and could not have learned from the medical records, on or before March 20, 1978, that Claimant had had back surgery in 1959. Accordingly, Section 8(f) of the Act is not applicable.[3]

Petitioners appealed the ALJ's decision to the Benefits Review Board. Abandoning their challenge to the extent of Anderson's injuries, petitioners stated that the "sole issue on [ ] appeal is whether or not the [ALJ] was correct in holding that the prior injury was not manifest."[4] (The manifest requirement is not explicit in the statute; it has its source in judicial decisions. *See* note 8.) The Board affirmed the ALJ's decision, stating:

> A pre-existing disability is manifest if it is objectively determinable from the medical records. An undocumented pre-existing disability is not manifest, however, merely because it could have been diagnosed if claimant had been x-rayed or examined. There must be information available which alerts employer to the existence of a medical condition. In the instant case, the mere existence of a scar without any relevant diagnoses prior to March 20, 1978,

---

1. The ALJ specifically asked petitioners' counsel if he had any medical records to substantiate Anderson's 1959 laminectomy. Counsel responded that he had obtained some records, but they were indecipherable: "The only thing they really showed is the fact that [Anderson] was in the hospital." Transcript of September 24, 1981 hearing, at 14–15. Counsel did not submit these records to the ALJ.

2. This finding is not at issue on this appeal.

3. ALJ's Decision and Order of September 28, 1982, at 5–6 (record citations and footnote omitted).

4. Brief of Petitioners filed with Benefits Review Board on November 1, 1982, at 2.

is not sufficient. As employer is not a medical expert, simply seeing the scar without a relevant medical diagnosis could not have alerted employer to claimant's condition. We emphasize that employer introduced no medical records from claimant's prior surgery into evidence. As the administrative law judge's determination that claimant's prior condition was not manifest is supported by substantial evidence and contains no reversible error, it must be affirmed.[5]

Petitioners filed a request for modification, which the ALJ denied. The Board affirmed. Petitioners then filed this appeal.

## DISCUSSION

■ The "second injury" provision of section 8(f) of the Act, 33 U.S.C. § 908(f), provides in pertinent part:

(1) In any case in which an employee having an existing permanent partial disability suffers injury, the employer shall provide compensation for such disability as is found to be attributable to that injury.... In ... cases of total permanent disability or of death, found not to be due solely to that injury, of an employee having an existing permanent partial disability, the employer shall provide ... compensation payments or death benefits for one hundred and four weeks only....

(2) After cessation of the payments for the period of weeks provided for herein, the employee or his survivor entitled to benefits shall be paid the remainder of the compensation that would be due out of the special fund established in section 944 of this title....

Thus, when a partially disabled employee becomes totally disabled as a result of a work-related incident, the employer may be entitled to invoke section 8(f) and limit its liability to the first 104 weeks of disability compensation. The purpose of section 8(f) is to discourage discrimination against disabled workers.[6] "Congress sought to ensure that employers would not hesitate to hire a partially disabled person out of fear of increasing their liability in the event that a work-related injury, combined with a preexisting partial disability, resulted in a total disability."[7]

■ Realizing that the purpose of section 8(f) is to prevent discrimination against disabled workers, the majority of the federal circuits, including this one, have held that an employer is entitled to relief under section 8(f) only if the preexisting disability was "manifest" to the employer prior to the compensable injury.[8] "The courts reasoned that Section 8(f) should apply only to situations in which the existing disability is manifest, and therefore capable of causing or supporting discrimination against disabled workers."[9] Thus, in this circuit, an employer is entitled

---

**5.** Board's Decision and Order of May 20, 1986, at 2.

**6.** *E.g., Equitable Equipment Co., Inc. v. Hardy,* 558 F.2d 1192, 1196 n. 10 (5th Cir.1977).

**7.** *Bunge Corp. v. Director, Office of Workers Compensation,* 951 F.2d 1109, 1110–1111 (9th Cir. 1991).

**8.** *See Hardy,* 558 F.2d at 1196 n. 10; *see also General Dynamics Corp. v. Sacchetti,* 681 F.2d 37, 39–40 (1st Cir.1982); *Sealand Terminals, Inc. v. Gasparic,* 7 F.3d 321, 323–24 (2d Cir.1993); *Director, Office of Workers' Compensation Programs v. Universal Terminal & Stevedoring Corp.,* 575 F.2d 452, 456 (3d Cir.1978); *Lambert's Point Docks, Inc. v. Harris,* 718 F.2d 644, 648 (4th Cir.1983); *Duluth, Missabe and Iron Range Railway Co. v. U.S. Department of Labor,* 553 F.2d 1144, 1151 (8th Cir.1977); *Director, Office of Workers' Compensation Programs v. Cargill, Inc.,*

709 F.2d 616, 619 (9th Cir.1983) (*en banc*); *Jacksonville Shipyards, Inc. v. Director, Office of Workers' Compensation Programs,* 851 F.2d 1314, 1316 (11th Cir.1988); *Director, Office of Workers' Compensation Programs v. Brandt Airflex Corp.,* 645 F.2d 1053, 1058 (D.C.Cir.1981). Only one circuit, the Sixth, has declined to read a manifest requirement into section 8(f). *American Ship Building Co. v. Director, Office of Workers' Compensation Programs,* 865 F.2d 727, 731–32 (6th Cir.1989). To the extent petitioners' brief may be construed as encouraging this panel to follow the Sixth Circuit and abandon the manifest requirement, we note that we are without authority to do so. Only the *en banc* court or the Supreme Court may overrule the settled law of this circuit. *United States v. Evans,* 910 F.2d 790, 797 (11th Cir.1990), *aff'd,* —— U.S. ——, 112 S.Ct. 1881, 119 L.Ed.2d 57 (1992).

**9.** *Director, Office of Workers' Compensation Programs v. General Dynamics Corp.,* 980 F.2d 74, 81 (1st Cir.1992).

to relief under section 8(f) if the employer can prove (1) that the employee had a preexisting, permanent partial disability; (2) that this preexisting disability was manifest to the employer prior to the compensable injury; and (3) that the preexisting disability contributed to the seriousness of the compensable injury.[10] Only part two of this three part test is at issue in this case. The parties do not challenge the ALJ's findings as to parts one and three of the test. Because our holding rests on the absence of the manifest requirement, we may assume, without deciding, that the ALJ's findings as to the other two parts of the test are correct.

■■■ An employer may satisfy the manifest requirement by proving that it had actual knowledge of the employee's preexisting disability.[11] Petitioners do not contend that C.G. Willis, Inc., had actual knowledge of Anderson's preexisting back condition. Rather, petitioners contend that C.G. Willis, Inc., had constructive knowledge of this condition by virtue of the scar on Anderson's back. We must decide, then, whether a scar on Anderson's back was sufficient in and of itself to make "manifest" to his employer that he had a preexisting back condition.

The majority of the courts that have addressed the issue have held that an employer may satisfy the manifest requirement even if the employer did not have *actual* knowledge of the preexisting condition.[12] For example, the First Circuit has held that, "regardless of the employer's actual knowledge, a condition has been considered 'manifest' if it was diagnosed and identified in medical records available to the employer." [13] Courts have also held that a diagnosis may not be necessary to render a disability "manifest" if there is other "objective evidence" of the disability. As the Ninth Circuit has said, a disability may be manifest if

> "although a diagnosis as such is not expressly stated in the medical records nevertheless sufficient unambiguous, objective, and obvious indication of a disability is reflected by the factual information contained in the available records so that the disability should be considered manifest even though actually unknown by the employer." [14]

One of the rationales for this "objective" approach is that it is in keeping with the purpose of section 8(f): "if the test of § 8(f) coverage is the ... employer's actual knowledge of the prior disability, employers will

10. *Jacksonville Shipyards,* 851 F.2d at 1316.

11. *Equitable Equipment Co.,* 558 F.2d at 1199 (employer satisfied manifest requirement because "the employer or its medical staff actually knew about [claimant's] previous back impairment when they hired him").

12. Only one circuit, the Eighth, has indicated that it may require actual knowledge to satisfy the manifest requirement. In *Duluth, Missabe and Iron Range Railway Co.,* 553 F.2d at 1151, the court, in concluding that the employer could not satisfy the manifest requirement, said: "[T]he Employer's own medical examinations demonstrate that the information available to the Employer during [claimant's] employment did not make [claimant's] arthritic condition manifest to the Employer. Here, the Employer is bound by its own negative medical findings.... The knowledge possessed by the physicians treating [claimant] in 1959 cannot be attributed to the Employer."

13. *White v. Bath Iron Works Corp.,* 812 F.2d 33, 35 (1st Cir.1987) (citations omitted); *see also Universal Terminal & Stevedoring Corp.,* 575 F.2d at 456–57 (Third Circuit held that preexisting medical infirmities that "were readily discover-

able by any employer who looked at [claimant's] medical record" rendered the disability manifest); *Bunge Corp.,* 951 F.2d at 1111 (Ninth Circuit said: "If the condition is readily discoverable from the employee's medical record in the possession of the employer, knowledge of the condition is imputed to the employer"); *Brandt Airflex Corp.,* 645 F.2d at 1062 (D.C. Circuit held that disability was manifest when "medical records plainly stated [claimant's] impairment").

14. *Bunge Corp.,* 951 F.2d at 1111 (quoting *Eymard & Sons Shipyard v. Smith,* 862 F.2d 1220, 1224 (5th Cir.1989)); *see also General Dynamics Corp.,* 980 F.2d at 83 ("the disability is manifest to those employers who know that the disability is permanent or who are uncertain, but have objective evidence of a serious lasting problem that would motivate a cautious employer to discharge the employee because of a greatly increased risk of liability"); *Director, Office of Workers' Compensation Programs v. Berkstresser,* 921 F.2d 306, 310 (D.C.Cir.1990) ("the appropriate legal standard for manifestation requires a showing of objective evidence of a serious disabling condition that would motivate the cautious employer to discharge the employee because of a greatly increased risk of liability") (citations and internal quotations omitted).

insist upon pre-hire physical examinations, thereby erecting barriers to the employment of the partially disabled."[15] The approach also "recognizes the practical difficulties in application of a rule requiring proof of the employer's actual knowledge, and avoids disputes as to the employer's awareness of, or the actual consideration given to, a particular medical record or other evidence of an existing disability."[16]

This court has not had occasion to decide whether to adopt the objective standard for determining when a preexisting condition is manifest,[17] and we need not do so in this case.[18] Even assuming that the objective standard were applicable, petitioners could not meet it. The courts have uniformly held a disability is not manifest merely because it was "discoverable," that is, it might have been discovered had the proper testing been performed.[19] As the Fifth Circuit has said:

> A disease is not manifest ... when it is unknown to the employer and merely might have been discovered had proper testing been performed. The question is whether the condition was discoverable by the employer based on then existing medical records available to it.[20]

We agree. Petitioners in this case have not offered *any* medical records predating Anderson's March 10, 1978, injury. Thus, petitioners have failed to demonstrate that there was objective evidence of Anderson's back condition in records available to Anderson's employer. We hold that the mere presence of a scar on Anderson's back is insufficient to render his back condition "manifest" to his employer under the objective standard applied in the cases cited herein.

## CONCLUSION

Accordingly, for the reasons explained above, the decision of the Benefits Review Board is AFFIRMED.

---

15. *Universal Terminal & Stevedoring Corp.*, 575 F.2d at 456; *see also Brandt Airflex Corp.*, 645 F.2d at 1062 ("Requesting medical records or information may require some slight effort, but the purpose of section 8(f) is not to reward employer diligence.").

16. *Bath Iron Works Corp.*, 812 F.2d at 35–36 (citations and internal quotations omitted).

17. The Fifth Circuit in *Equitable Equipment Co.* noted the "practical difficulties" of requiring actual knowledge of the employee's condition. 558 F.2d at 1196 n. 10. Because the court found that the employer had actual knowledge of the condition, however, the court found it unnecessary to decide whether something other than actual knowledge would suffice. More recently, in *Mississippi Coast Marine, Inc. v. Bosarge*, 637 F.2d 994, *modified*, 657 F.2d 665 (5th Cir.1981), the Fifth Circuit said that section 8(f) "was designed to prevent discrimination against handicapped workers by limiting the liability of an employer who hires a handicapped worker *with knowledge* of his disability...." 637 F.2d at 1000–1001 (emphasis added). Although this statement implies that actual knowledge may be required, the statement is dicta, and the opinion was subsequently modified.

18. We follow the examples of the Fourth and Fifth Circuits in *Lambert's Point Docks, Inc. v. Harris*, 718 F.2d at 648, and *Eymard & Sons Shipyard v. Smith*, 862 F.2d 1220, 1223 (5th Cir.1989). In these two cases, the courts assumed without deciding that the objective standard was applicable and held that the employer could not meet the standard.

19. *Bath Iron Works Corp.*, 812 F.2d at 36 (First Circuit declined "[to] extend [objective standard] rule to what could have been found by an unperformed diagnostic examination of the prospective employee, that is, to read 'manifest' as 'discoverable' "); *Sealand Terminals*, 7 F.3d at 323 (Second Circuit held that fact that "back condition *could* have been discovered through the use of X-rays hardly renders the condition manifest"); *Lambert's Point Docks*, 718 F.2d at 648 (Fourth Circuit "decline[d] to hold that a pre-existing disease is manifest when it might have been discovered by proper diagnosis but had not been"); *Bunge Corp.*, 951 F.2d at 1111 (Ninth Circuit held that "disability is not manifest when it is unknown to the employer and merely might have been discovered had proper testing been performed").

20. *Eymard & Sons Shipyard*, 862 F.2d at 1224.