**EYMARD & SONS SHIPYARD and Gulf Coast Insurance Company, Petitioners,**

v.

McGee **SMITH and Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.**

No. 87–4670.

United States Court of Appeals, Fifth Circuit.

Jan. 13, 1989.

prejudice of the suit against it is affirmed.

tive law judge (ALJ) found to be a permanent total disability. Smith's employer, petitioners Eymard & Sons Shipyard (Eymard), and its insurer, Gulf Coast Insurance Company (Gulf Coast), sought the protection of the "secondary-injury" fund of LHWCA section 44, 33 U.S.C. § 944, pursuant to the provision for "Injury Increasing Disability," LHWCA section 8(f), 33 U.S.C. § 908(f). Section 8(f) seeks to prevent discrimination against handicapped workers by limiting an employer's liability to 104 weeks of compensation, after which the second injury fund assumes the payments, if the worker had a preexisting permanent partial disability that was manifest and contributed to the compensable injury. The ALJ found that Smith's silicosis had not been manifest and therefore concluded that section 8(f) was inapplicable. The Benefits Review Board (the Board) affirmed. Petitioners do not contest the award of benefits to Smith and only appeal the determination that section 8(f) relief was not available to them because they had not met the manifestness requirement.

### Facts and Proceedings Below

Smith worked as a sandblaster from 1961 to 1980. He began working for Eymard in 1977. On June 6, 1979, Eymard sent Smith and several other sandblasters that it employed to Dr. William Mosby, a specialist in internal medicine, for chest x-rays. Smith had no symptoms of any pulmonary dysfunction and did not know why he was being sent to Dr. Mosby. Dr. Mosby concluded that the x-rays of Smith's lungs showed some abnormalities, but he offered no diagnosis. Dr. Mosby informed Eymard of the x-ray results and recommended pulmonary function tests by Dr. Thomas Grimstad. At that time, Smith's supervisor at Eymard told Smith that the x-ray showed a "spot on his lung."

On June 8, 1979, Dr. Grimstad performed pulmonary function tests, and Dr. David Hunter, a radiologist, took additional chest x-rays. Dr. Grimstad reported normal results. Dr. Hunter found "hyperlucent" areas in the lower lungs, which, he stated, could indicate an "alpha–1 anti-trypsin deficiency" or "compensatory emphysematous

Thomas W. Thorne, Jr., New Orleans, La., for petitioners.

Joshua T. Gillelan, II, T. Timothy Ryan, Jr., Solicitor, U.S. Dept. of Labor, Washington, D.C., Joseph M. Bruno, New Orleans, La., for respondents.

Linda Meekins, Clerk, Benefits Review Bd., Washington, D.C., for other interested parties.

Before CLARK, Chief Judge, GOLDBERG and GARWOOD, Circuit Judges.

GARWOOD, Circuit Judge:

Respondent McGee Smith (Smith) was awarded benefits under the Longshoremen's and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 901–950, for work-related silicosis, which the administra-

changes" due to "chronic fibrotic abnormality" in the upper lung area from "previous granulomatous disease" or "minimal active inflammatory disease." Dr. Hunter concluded that "correlation with clinical and laboratory findings is needed."

Smith returned to work believing there was nothing wrong. In June of 1980, he first noticed problems with shortness of breath. The record does not reflect whether he communicated these problems to Eymard. On July 24, 1980, he was fired. Shortly thereafter Smith went to Dr. Martin Brown, an expert in pulmonary diseases, who diagnosed Smith as "totally and permanently disabled from a lung standpoint" due to "both restrictive and obstructive lung disease." Dr. Brown's final diagnosis, confirmed by two other specialists in pulmonary diseases, is progressive, complicated silicosis.

Smith then sought workers' compensation benefits from Eymard and Gulf Coast. The ALJ rendered his findings and conclusions on December 5, 1983. He found that Smith was temporarily totally disabled on July 24, 1980, Smith's last day of work at Eymard, and permanently totally disabled on February 12, 1981, the day he reached maximum medical improvement. The ALJ found as follows with regard to section 8(f):

> "[T]hree prerequisites must be met for ... section [8(f)] to apply, to wit: (1) The Claimant must have a pre-existing permanent partial disability, (2) which contributes to a greater disability arising out of an injury giving rise to the claim and (3) this existing disability must be manifest to the employer.... At the hearing, the Employer/Carrier Gulf Coast raised the question of a prior injury from Claimant's pre-existing silicosis while in its employ in June of 1979. The retention of an employee with a manifest lung disease which is progressively ag-

gravated will bring Section 8(f) into play.... However, Claimant must have a pre-existing disability which was *manifest* to the employer. While in retrospect it appears that Claimant had silicosis in June of 1979, the medical records of his lung condition at that time did not reflect a pre-existing disability which was manifest to the employer.

> "Granted that the June 1979, x-rays of Claimant's chest reflected an abnormality and that a specific diagnosis of silicosis was not necessary to place the Employer on notice of a pre-existing condition, considering the nature of the medical reports and the normal lung function studies the records did not reflect a pre-existing disbability which was manifest to the Employer nor a serious physical disability that would motivate a cautious employer to discharge the Claimant. Even Dr. Mosby states that based on the medical records available in June of 1979, he would not have told the Employer to take Claimant off his job. Dr. Mosby also stated that based on the medical records available in June, 1979, he could not have had an opinion as to whether or not Claimant's lung condition was work related. I conclude that Section 8(f) is not applicable to this claim."

Eymard and Gulf Coast appealed and the Board affirmed. The Board agreed that the June 1980 reports "do not provide sufficient information to motivate a cautious employer to consider terminating claimant in order to avoid compensation liability" and rejected petitioners' argument that a spot on a sandblaster's lungs itself satisfies the manifestness requirement. Petitioners timely appealed to this Court under 33 U.S.C. § 921(c).

## Discussion

Section 8(f) was enacted to prevent discrimination against handicapped workers.[1]

---

**1.** Section 8(f), 33 U.S.C. § 908(f) provides, in pertinent part:

"Injury increasing disability:

"(1) In any case in which an employee having an existing permanent partial disability suffers injury, the employer shall provide compensation for such disability as is found

to be attributable to that injury.... In ... cases of total permanent disability or of death, found not to be due solely to that injury, of an employee having an existing permanent partial disability, the employer shall provide ... compensation payments or death

*See Lawson v. Suwanee Fruit & Steamship Co.*, 336 U.S. 198, 69 S.Ct. 503, 504–06, 93 L.Ed. 611 (1949); *Mississippi Coast Marine v. Bosarge*, 637 F.2d 994, 1000–01 (5th Cir.1981), *modified*, 657 F.2d 665, 666–67 (1981). Such discrimination was thought likely to result from the LHWCA aggravation rule, which provides that when "an employment injury worsens or combines with a preexisting impairment ... the entire resulting disability is compensable." *Strachen Shipping Co. v. Nash*, 782 F.2d 513, 517 (5th Cir.1986) (en banc). Section 8(f), insofar as here relevant, limits an employer's compensation payments for a work-related permanent disability to the first 104 weeks if the employee had an "existing permanent partial disability" that contributed to the second injury.[2] Payments after the first 104 weeks of permanent disability are then paid from the "second injury fund" established by section 44 of the LHWCA, 33 U.S.C. § 944, and financed by assessments from members of the industries covered by the LHWCA. By providing for payments from the second injury fund, section 8(f) prevents the aggravation rule from acting as a financial disincentive to the hiring or retaining of handicapped workers.

For section 8(f) to apply, the preexisting permanent partial disability must be "manifest." *Equitable Equip. Co. v. Hardy*, 558 F.2d 1192, 1199 (5th Cir.1977). *See also White v. Bath Iron Works Corp.*, 812 F.2d 33, 35 (1st Cir.1987); *Lambert's Point Docks, Inc. v. Harris*, 718 F.2d 644, 648 (4th Cir.1983); *Director, Off. of Workers' Comp. Programs v. Cargill, Inc.*, 709 F.2d 616, 618–19 (9th Cir.1983) (en banc); *Director, Off. of Workers' Comp. Programs v. Brandt Airflex Corp.*, 645 F.2d 1053, 1061–62 (D.C.Cir.1981); *Director, Office of Workers' Compensation Programs v. Universal Terminal & Stevedoring Corp*,

575 F.2d 452, 456–57 (3d Cir.1978). This requirement serves an obvious function: a latent condition cannot logically be said to be an "existing permanent partial disability" and cannot be capable of causing discrimination against the worker. A diagnosed, preexisting condition of which the employer is actually aware, of course, is manifest. *See Hardy*, 558 F.2d at 1199. However, in *Hardy*, we did not purport to hold that a preexisting disability was manifest *only* when the employer had actual knowledge, *cf. Bosarge*, 637 F.2d at 1000–01 (section 8(f) limits liability "of an employer who hires a handicapped worker with knowledge of his disability"), and several other Circuits have adopted an alternative objective standard, holding that a medical condition that has been "diagnosed and identified in medical records available to the employer," is manifest regardless of the employer's actual knowledge. *White*, 812 F.2d at 35. *See Brandt Airflex*, 645 F.2d at 1061–62; *Universal Terminal*, 575 F.2d at 456–57. "This approach recognizes the 'practical difficulties in application' of a rule requiring proof of the employer's actual knowledge ... and avoids disputes as to the employer's awareness of, or the actual consideration given to, a particular medical record or other evidence of an existing disability." *White*, 812 F.2d at 35–36.

We need not decide whether to adopt this objective standard for determining when a preexisting condition is manifest, however. We must affirm the finding that the employee's existing condition was not manifest if there is substantial evidence to support that finding. 33 U.S.C. § 921(b)(3); *Hardy*, 558 F.2d at 1199. Here, substantial evidence supports the finding of the ALJ, which the Board affirmed, even if we apply the objective standard (which in sub-

---

benefits for one hundred and four weeks only."

**2.** We assume but do not hold that section 8(f) would apply to Smith's progressive, occupational disease (silicosis). Other Circuits have consistently rejected broad arguments that section 8(f) does not apply in such cases. *See Director, Off. of Workers' Comp. Programs v. General Dynamics Corp.*, 705 F.2d 562, 563–66 (1st Cir.

1983). The employer seeking section 8(f) relief must still prove that continued on-the-job exposure aggravated a preexisting disability so as to result in a greater disability than would otherwise have been present. *Bechtel Associates, P.C. v. Sweeney*, 834 F.2d 1029, 1036 (D.C.Cir.1987). *See Bosarge*, 657 F.2d at 666–67. Here the ALJ made no specific findings with regard to this requirement.

stance is the standard the ALJ and the Board applied).

The evidence showed that Smith did in fact have silicosis in June 1979. There was no evidence that Eymard had actual knowledge of Smith's disease. Nor apparently did the physicians treating Smith at that time. Dr. Mosby and Dr. Hunter both saw abnormalities on Smith's chest x-rays but were unable to offer a diagnosis without further tests. The results of clinical tests for pulmonary function performed by Dr. Grimstad were normal and thus did not indicate that the abnormalities shown by the x-rays indicated a pulmonary disease. No disease was diagnosed, though Dr. Brown (who had not examined Smith prior to July 1980) stated that he believed that the 1979 x-rays were "adequate for a diagnosis of silicosis."

A disease is not manifest, however, when it is unknown to the employer and merely might have been discovered had proper testing been performed. *See White,* 812 F.2d at 36; *Lambert's Point Docks,* 718 F.2d at 648. The question is whether the condition was discoverable by the employer based on then existing medical records available to it. A clear diagnosis in such records would, of course, meet this test. And we assume, *arguendo,* that there may be instances where although a diagnosis as such is not expressly stated in the medical records nevertheless sufficient unambiguous, objective, and obvious indication of a disability is reflected by the factual information contained in the available records so that the disability should be considered manifest even though actually unknown to the employer. Here, however, Smith's medical records indicated nothing more than an undiagnosed spot on his lungs. The two physicians who were concerned by the x-rays could not offer a diagnosis without further tests, and the further tests were normal. We therefore conclude that substantial evidence supports the determination that Smith's disease, which was not diagnosed by his physicians and not clearly indicated by correlating his physicians' reports, was not manifest. The fact that another physician might have diagnosed the disease is not determinative. It is not unreasonable for the ALJ and the Board to have concluded, in effect, that, based on the records available to them, Smith's employer cannot be charged with medical knowledge superior to that of Smith's then treating physicians.

### Conclusion

Because we find substantial evidence supporting the ALJ's and the Board's finding that Smith's silicosis was not manifest, the decision of the Board affirming the ALJ is

AFFIRMED.