United States Court of Appeals,

Fifth Circuit.

No. 96-60716.

CERES MARINE TERMINAL;  Ceres Gulf, Inc., Petitioners,

v.

DIRECTOR, OFFICE OF WORKER'S COMPENSATION PROGRAMS, U.S. DEPARTMENT OF LABOR, Respondent.

July 31, 1997.

Petition for Review of an Order of the Benefits Review Board.

Before SMITH, BARKSDALE and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

Billy Allred, who injured his left shoulder and neck during the course and scope of his employment as a longshore worker, sought and received workers' compensation benefits under the Longshore and Harbor Workers' Compensation Act ("LHWCA" or "the Act"), 33 U.S.C. §§ 901-50.  Based in part on findings that Allred suffered from pre-existing permanent partial disabilities and that his employment injury "was not totally disabling in and of itself," an administrative law judge ("ALJ") awarded special fund relief to Allred's employer, Ceres Gulf, Inc. and Ceres Marine Terminal (collectively "Ceres").  The Benefits Review Board ("BRB") reversed the ALJ's grant of special fund relief to Ceres and concluded that the medical opinions relied upon by the ALJ did not establish that the employment injury alone would not have caused the claimant's permanent total disability.  Because there was substantial evidence in the record to support the ALJ's finding that Allred's permanent total disability was not due solely to his employment injury, we

1

vacate the judgment of the BRB. Nonetheless, we remand the case to the ALJ to determine whether Allred's pre-existing degenerative cervical spine disease was manifest to Ceres prior to the employment injury.

## I. Standard of Review

The BRB does not have the statutory authority "to engage in a de novo review of the evidence or to substitute its views for those of the ALJ." *Mijangos v. Avondale Shipyards, Inc.,* 948 F.2d 941, 944 (5th Cir.1991). Instead, the LHWCA requires the BRB to accept the findings of the ALJ "unless they are not supported by substantial evidence in the record considered as a whole or unless they are irrational." *Id.* (citing 33 U.S.C. § 921(b)(3)). Thus, when we review decisions of the BRB, our "only function is to correct errors of law and to determine if the BRB adhered to its proper scope of review—*i.e.,* has the Board deferred to the ALJ's fact-finding or has it undertaken de novo review and substituted its views for the ALJ's." *Avondale Shipyards, Inc. v. Vinson,* 623 F.2d 1117, 1119 n. 1 (5th Cir.1980). In conducting our review, we must independently examine the record to determine whether the ALJ's findings are supported by substantial evidence.[1] *Id.*

---

[1]We have previously recognized the distinction between the scheme of judicial review adopted by the LHWCA and the scheme applicable in labor cases. *Id.* Because the labor board may reassess the factual findings of an ALJ, we review that board's findings for substantial evidence. *Id.* (citing *Presley v. Tinsley Maintenance Serv.,* 529 F.2d 433, 436 (5th Cir.1976); 29 U.S.C. § 160(e)). We concluded from this distinction that the LHWCA "has the effect of shifting deference away from the BRB and to the ALJ." *Id.* We also explained that "[t]he only difference is what institution, the ALJ or the Board which reviews its decision, is entitled to the ultimate deference when there is a conflict. In

## II. Statutory Background

The LHWCA is a federal workers' compensation statute that fixes disability benefits for maritime workers injured on the job. Under the traditional "aggravation rule" of workers' compensation law, an employer is liable for a worker's entire disability even though the disability was the result of both a current employment injury and a pre-existing impairment. *See Strachan Shipping Co. v. Nash,* 782 F.2d 513, 517 (5th Cir.1986) (en banc). Congress enacted section 8(f) of the LHWCA, 33 U.S.C. § 908(f), to diminish an employer's incentive to discriminate against partially disabled workers out of fear of increased liability under the aggravation rule. *Director, OWCP v. Bethlehem Steel Corp.,* 868 F.2d 759, 761 (5th Cir.1989).

Section 8(f) places a temporal limitation on an employer's liability for a work-related permanent disability if the employee had an "existing permanent partial disability" that contributed to the current employment injury. *See* 33 U.S.C. § 908(f); *Eymard & Sons Shipyard v. Smith,* 862 F.2d 1220, 1223 (5th Cir.1989). Payments after the employer's liability expires are then paid from the "second injury fund" established by section 44 of the LHWCA, 33 U.S.C. § 944, and financed by members of the industries covered by the Act. *Eymard & Sons Shipyard,* 862 F.2d at 1223. To obtain special fund relief under section 8(f) when an employee is permanently totally disabled, an employer must show that (1) the employee had a pre-existing permanent partial disability, (2) the

LHWCA cases, the ALJ wins, in labor cases, the Board wins." *Id.*

3

pre-existing permanent partial disability was manifest to the employer prior to the current employment injury, and (3) the current disability was not due solely to the employment injury. *Two "R" Drilling Co., Inc. v. Director, OWCP,* 894 F.2d 748, 750 (5th Cir.1990).

This appeal raises issues related to the second and third requirements for special fund relief.

### III. The "Contribution" Requirement

To be eligible for section 8(f) relief, an employer must establish that the claimant's current disability was not due solely to the employment injury. *See* 33 U.S.C. § 908(f); *Two "R" Drilling Co.,* 894 F.2d at 750. The purpose of this requirement is to ensure that the employer compensates the employee for the entire employment injury. *See Bethlehem Steel Corp.,* 868 F.2d at 762. Thus, if the employment injury was sufficient, by itself, to cause the claimant's total permanent disability, the employer should be liable for the entire compensation award and section 8(f) relief should be denied. The aggravation rule that section 8(f) was intended to counteract never comes into play under these circumstances because the employer would be liable to the same extent if an able-bodied employee suffered the same injury. *See Director, OWCP v. General Dynamics Corp.,* 982 F.2d 790, 798 (2d Cir.1992) ("The section 8(f) relief provision was not intended to create a windfall for any employer that hires a disabled worker by limiting its liability even when the later injury itself would have permanently and totally disabled the employee").

4

The ALJ began his analysis of the contribution requirement in the instant case by correctly noting that the "[e]mployer has the burden of establishing that the employment-related injury would not have rendered the employee permanently totally disabled absent the pre-existing disability." (citing *Two "R" Drilling Co.,* 894 F.2d at 748).  The ALJ proceeded to canvas the medical testimony of three physicians.  From that testimony, the ALJ found that "the [e]mployer ha[d] established that the current injury was not totally disabling in and of itself."  Thus, the ALJ concluded that Ceres was entitled to section 8(f) relief based on Allred's "pre-existing back, arm, elbow, and shoulder disabilities."

The medical evidence relied upon by the ALJ established that Allred's pre-existing disabilities combined with his employment injury to produce a greater disability than would have occurred in the absence of the pre-existing disabilities.  Dr. Andrew P. Kant testified that Allred's current disability was the result of a combination of both a pre-existing back condition and the employment injury.  In addition, Dr. Gerald R. Litel stated that "most" of Allred's current disability was due to his pre-existing back injury, rather than to his current neck injury.  Nonetheless, Dr. Litel opined that it was probable that any current disability attributable to Allred's neck was the result of a pre-existing degenerative cervical spine disease "superimposed on and combined with" the employment injury.  Finally, Dr. Litel unequivocally stated that Allred's pre-existing cervical spine disease combined with the employment injury to result in disability that was

5

"materially and substantially greater" than would have occurred from the employment injury alone.

The Director argues that such evidence is insufficient to satisfy the contribution requirement because it does not establish that the claimant's current disability was not due solely to the employment injury. It is true, of course, that evidence that a claimant's current disability was greater because of a pre-existing disability or that the current disability was the result of a combination of a pre-existing disability and an employment injury does not *necessarily* prove that the current disability was not due solely to the employment injury. This would be the case where the employment injury alone renders a claimant totally disabled (*i.e.,* unemployable), but a pre-existing disability nonetheless combines with the employment injury to make the claimant's physical condition even worse (*e.g.,* more painful).

On the other hand, this uncontroversial proposition should not obscure the fact that such evidence *can* satisfy the contribution requirement *under some circumstances.* This would be the case where a pre-existing partial disability combines with an employment injury to increase what would otherwise have been a partial disability into a total disability. In other words, the existence of multiple injuries that combine to increase a claimant's disability will satisfy the contribution requirement when the pre-existing injuries are necessary to push the claimant "over the hump" from partial to total disability.

We believe that it is the role of the ALJ to determine from

6

the record whether borderline evidence of the type that existed in this case falls into the former or latter category. Although it would be helpful if attorneys asked questions designed to elicit the "magic words" that authorize special fund relief, we decline to adopt a rule that would require a rote recitation of the applicable legal standard. In the absence of such magic words, the fact finder's inquiry must of necessity be resolved by inferences based on such factors as the perceived severity of the pre-existing disabilities and the current employment injury, as well as the strength of the relationship between them.[2] This court does not have the expertise necessary to properly evaluate the complex and frequently conflicting testimony of neurological surgeons, orthopedists, and other medical experts on this score. Instead, we must leave this particular fact finding decision precisely where Congress placed it—with the ALJ. *See Mijangos,* 948 F.2d at 945 (explaining that when the facts in a case could support a finding in favor of either party, the choice between reasonable inferences is left to the ALJ).

---

[2]The evidence in this regard supported the inferences drawn by the ALJ in the instant case. Allred suffered from numerous pre-existing disabilities, including hypertension and diabetes, as well as severe arm, elbow, neck and shoulder, and back injuries. His back condition resulted in two operations, numerous visits to a hospital emergency room, and significant periods of absence from work. Allred's current employment injury appears relatively minor when viewed in light of his medical record as a whole. This is especially true given evidence in the record that suggests that Allred's current neck injury was caused, at least in part, by the degenerative condition created by his prior injuries. We find it significant that Dr. Litel reviewed Allred's medical records from before the employment injury and predicted that "[s]ignificant disability is likely to develop in cases of this kind."

The cases relied upon by the Director are not to the contrary. In several of the decisions, section 8(f) relief was denied by the ALJ in the first instance. *See Two "R" Drilling Co.,* 894 F.2d at 749;[3] *Director, OWCP v. Jaffe New York Decorating,* 25 F.3d 1080, 1083 (D.C.Cir.1994); *FMC Corp. v. Director, OWCP,* 886 F.2d 1185, 1186 (9th Cir.1989). In the others, the ALJ applied the wrong legal standard in granting relief. *See General Dynamics Corp.,* 982 F.2d at 797-98; *Director, OWCP v. Luccitelli,* 964 F.2d 1303, 1306 (2d Cir.1992). These cases are clearly distinguishable from the present situation in which the ALJ granted an employer special fund relief based on an application of the correct legal standard.

The evidence in the instant case was sufficient for the ALJ to

---

[3]In *Two "R" Drilling, id.* at 749-50, we affirmed the BRB's affirmance of an ALJ's denial of section 8(f) relief to an employer. We concluded as a matter of law that the employer "did not meet its burden of showing that the current disability [was] not due solely to the employment injury since [it] put no medical evidence before the ALJ which suggest[ed] that [the claimant's] pre-existing disability in any way contributed to his current disability." *Id.* at 750. In reaching this conclusion, we declined to adopt a "common-sense" presumption that would have dispensed with the claimant's obligation to present such evidence when the claimant had a history of back problems prior to suffering a totally disabling back injury. *Id.* We explained that such a presumption was inappropriate because it would read the contribution requirement out of the Act by merging the contribution requirement with a claimant's obligation to establish a pre-existing permanent partial disability. *Id.*

*Two "R" Drilling* simply does not apply to this case because Ceres has presented evidence that suggested that Allred's pre-existing disabilities in some way contributed to his current disability. Moreover, although we refused to presume contribution based on a history of prior injury in the absence of such evidence, we never held that an ALJ was precluded from taking that history into account in drawing an inference from the evidence that the current disability was not due solely to the employment injury.

have inferred that Allred's pre-existing permanent partial disabilities combined with his employment injury to increase what would otherwise have been a partial disability into a total disability. This evidence was sufficient, in turn, for the ALJ to have found that the claimant's current disability was not due solely to the employment injury. Therefore, we conclude that the BRB exceeded its statutory power of review by substituting its view of the facts for those of the ALJ. Accordingly, we vacate the decision of the BRB and reinstate this aspect of the ALJ's order.

IV. The "Manifest" Requirement

To satisfy the requirements of section 8(f), this court has required an employer to prove that the claimant's pre-existing permanent partial disability was "manifest" to the employer prior to the current injury.[4] *See Two "R" Drilling Co.,* 894 F.2d at 750; *Eymard & Sons Shipyard,* 862 F.2d at 1223. We explained that "[t]his requirement serves an obvious function: a latent defect cannot logically be said to be an "existing permanent partial disability' and cannot be capable of causing discrimination against the worker." *Eymard & Sons Shipyard,* 862 F.2d at 1223.

We have previously recognized that a diagnosed, pre-existing disability of which the employer has actual knowledge is manifest. *Id.* In addition, most courts have recognized that an employer's

---

[4]Although section 8(f) does not explicitly require an employer's manifest knowledge of a pre-existing disability, courts have added this requirement to further the policy behind special fund relief. *See Director, OWCP v. Newport News Shipbuilding and Dry Dock Co.,* 8 F.3d 175, 182 n. 5 (4th Cir.1993), *aff'd* 514 U.S. 122, 115 S.Ct. 1278, 131 L.Ed.2d 160 (1995).

constructive knowledge of a pre-existing permanent partial disability is sufficient to satisfy the manifest requirement. *See, e.g., Bunge Corp. v. Director, OWCP,* 951 F.2d 1109, 1111 (9th Cir.1991) ("If the condition is readily discoverable from the employee's medical record in the possession of the employer, knowledge of the condition is imputed to the employer"); *Director, OWCP v. Berkstresser,* 921 F.2d 306, 310 (D.C.Cir.1990) ("When the evidence shows that such a "disability' was objectively apparent, the "manifest' requirement has been met"). Although this court has not expressly adopted an objective standard for determining whether an employer has satisfied the manifest requirement, we have "assumed that there may be instances where although a diagnosis as such is not expressly stated in the medical records[,] nevertheless sufficient unambiguous, objective, and obvious indication of a disability is reflected by the factual information contained in the available records so that the disability should be considered manifest even though actually unknown to the employer." *Eymard & Sons Shipyard,* 862 F.2d at 1224. The Director does not dispute that an objective inquiry is appropriate to determine whether the manifest requirement has been met.

It is undisputed that although the ALJ relied on a pre-existing degenerative cervical spine disease as one basis for finding contribution, his discussion of the manifest requirement lacks any mention of the condition.[5] Both parties urge this court

---

[5]The ALJ explicitly found that Allred's hypertension and injuries to his arm, elbow, and back were manifest to Ceres prior to the employment injury.

to independently review the record and correct this error without a remand. The Director argues that the record is devoid of any medical evidence to support a finding that Allred's degenerative cervical spine disease was objectively determinable to Ceres prior to the current employment injury. In contrast, Ceres argues that the ALJ made an implicit finding that Allred's degenerative cervical spine disease was manifest prior to the employment injury and that such a finding is supported by substantial evidence in the record. We believe, however, that the same considerations that led us to defer to the ALJ's finding with respect to the contribution requirement would render inappropriate any decision by this court in the first instance with respect to the manifest requirement. Accordingly, we remand the case to the ALJ for a finding on whether Allred's degenerative cervical spine disease was manifest to Ceres prior to the employment injury. *See Darby v. Ingalls Shipbuilding, Inc.,* 99 F.3d 685, 689 (5th Cir.1996) (vacating and remanding an ALJ's award for findings consistent with the requirements of the LHWCA).

## V. Conclusion

We hold that there was substantial evidence in the record to support and allow the ALJ's finding that Allred's permanent total disability was not due solely to his employment injury. The ALJ failed, however, to determine whether Allred's pre-existing degenerative cervical spine disease was manifest to Ceres prior to the employment injury. Therefore, we VACATE the order of the BRB and REMAND the case to the ALJ for the requisite finding.

11