**REVISED**

United States Court of Appeals,

Fifth Circuit.

No. 96-60770

Summary Calendar.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES
DEPARTMENT OF LABOR, Petitioner,

v.

INGALLS SHIPBUILDING, INC.,

and

Hollis Ladner, Respondents.

Oct. 21, 1997.

Petition for Review of an Order of the Benefits Review Board.

Before JOLLY, SMITH and STEWART, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

The Director of the Office of Workers' Compensation Programs
("OWCP"), United States Department of Labor ("Director"), petitions
for review of an order of the Benefits Review Board ("BRB")
granting Ingalls Shipbuilding, Inc. ("Ingalls"), special fund
contribution for a worker's pre-existing disability. Concluding
that Ingalls failed to meet its evidentiary burden, we grant the
petition for review and reverse and remand.

I.

Hollis Ladner worked for Ingalls in various capacities
starting in 1986. As a sheet metal worker, he was injured in
January 1987 when a jackhammer fell on his toe. William Hopper,

1

Ladner's physician, treated him.  After several months of being unable to work, Ladner returned to the shipyard, only to discover that Ingalls was discharging him because it required fewer sheet metal workers, and Ladner lacked seniority.

At Ladner's request, Ingalls found him another position as a joiner.  In this position, Ladner injured his left knee in September 1987 when he fell down a ladder while working on a ship and injured his left knee.  Again, he was treated by Hopper and his assistant.  After the fall from the ladder, Ladner complained to Hopper about his prior toe injury, and Hopper prescribed therapy.  Thereafter, Ladner had to undergo back surgery to repair two ruptured discs, apparently the result of his fall.

## II.

For his inability to work, Ladner claimed workers' compensation under the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901 *et seq.*  Ingalls unsuccessfully contested the claim before an administrative law judge ("ALJ"), who awarded Ingalls contribution from the LHWCA's special fund for part of its compensation payments.  *See* 33 U.S.C. §§ 908(f), 944.[1]

The Director appealed the ALJ's contribution finding to the BRB, which failed to act within the statutory period.  *See* Omnibus

---

[1]At the proceedings, Hopper—among others—testified that Ladner was disabled and that part of his current permanent partial disability was the result of his prior toe injury.  Hopper stated that the jackhammer injury had resulted in a 35% permanent disability to the toe.  Hopper also concluded that Ladner would face a 30% "whole man" disability after his fall from the ladder. On this evidence, the ALJ found that Ladner was entitled to partial disability compensation.

Appropriations Act for Fiscal Year 1996, Pub.L. No. 104-134, 110 Stat. 1321. As a result, the ALJ's decision was summarily affirmed. *See id.* The Director now petitions for review of that affirmance pursuant to 33 U.S.C. § 921(c).[2]

## III.

In petitions for review of a BRB order, we evaluate the ALJ's factual findings under a substantial evidence standard. *See, e.g., Ceres Marine Terminal v. Director, OWCP,* 118 F.3d 387, 389 (5th Cir.1997). Substantial evidence is that relevant evidence—more than a scintilla but less than a preponderance—that would cause a reasonable person to accept the fact finding. *See, e.g., Polanco v. City of Austin,* 78 F.3d 968, 974 (5th Cir.1996). Because the fact finder is entitled to deference, a reviewing body cannot substitute its own view of the facts for that of the ALJ. *See Ceres,* 118 F.3d at 389. Thus, our "only function is to correct errors of law and to determine if the BRB ... deferred to the ALJ's fact-finding...." *Avondale Shipyards, Inc. v. Vinson,* 623 F.2d 1117, 1119 n. 1 (5th Cir.1980); *accord Ceres,* 118 F.3d at 389. Because the BRB failed to act in this case, we look directly to the ALJ proceedings.

## IV.

Generally, the employer is liable under the LHWCA for an employee's entire disability upon injury, regardless of the effect that prior injuries have on the level of the resulting disability.

---

[2]Ladner has no interest in this case. Whichever party prevails, he will receive his disability payment.

*See Strachan Shipping Co. v. Nash,* 782 F.2d 513, 517 (5th Cir.1986) (en banc).  Essentially, this "aggravation rule" mimics the common law:  A tortfeasor takes his victim as he finds him.  *See, e.g., Vosburg v. Putney,* 80 Wis. 523, 50 N.W. 403, 404 (1891).

Standing alone, the aggravation rule creates a perverse incentive:  It discourages employers from hiring workers who have been previously injured.  *See, e.g., Ceres,* 118 F.3d at 389.  Risk averse employers rationally fear the expected costs of hiring a worker with a prior injury.[3]  Thus, all things otherwise equal, employers will prefer an employee without a prior injury.

To overcome this incentive to discriminate, Congress, in the LHWCA, provided for a special fund.[4]  *See* 33 U.S.C. §§ 908(f), 944. The LHWCA provides that any employer that meets the factors of § 908(f)(1) can obtain contribution from the special fund.  To qualify, the employer must prove that (1) the employee had a pre-existing permanent partial disability (2) that was "manifest" to the employer before the occurrence of the injury at issue, and (3) the disability following the subsequent injury was "not due solely" to the subsequent injury.  *See id.* § 908(f)(1); *Ceres,* 118 F.3d at 389-90.  Whether the third factor has been met is at issue

---

[3]This worry is exacerbated when the risk of injury is as great as it is among longshoremen and harbor workers.

[4]The special fund is financed by a taxing system on all employers in the industry.  *See* 33 U.S.C. § 944.  This device spreads the loss and internalizes the cost of the prior injury for the first employer. The first employer would otherwise escape paying for the worker's subsequent disability because the effects of the first injury remained latent during the worker's prior employment.

in this case.

The countervailing worry, as with any insurance system, is that those entitled to benefit from the special fund will face a moral hazard problem. Because they pay only a fraction of the costs, employers will rationally "over-demand" benefits from the special fund.[5]

In the LHWCA, Congress has attempted to control employers' incentives to use small, insignificant prior injuries to pass off, to the fund, costs that the employer should bear. Because this risk is especially large in permanent, partial disability cases, the LHWCA adds an additional component to the third statutory factor: The employer also must show that the disability following the subsequent injury was "materially and substantially greater than that which would have resulted from the subsequent injury alone." 33 U.S.C. § 908(f)(1). The Director claims that the ALJ applied the two parts of this third statutory factor incorrectly.

A.

The Director contends that the ALJ failed to find that the permanent partial disability resulting from Ladner's fall from the ladder was "not due solely" to his fall. The ALJ found that Ladner's permanent partial disability after his fall was increased because of his prior toe injury. The Director, however, maintains that in order to meet the "not due solely" requirement, the ALJ had

---

[5]*Cf. Ball Mem'l Hosp. v. Mutual Hosp. Ins., Inc.,* 784 F.2d 1325, 1332 (7th Cir.1986) ("Insurance creates "moral hazard.' Once a person has insurance, he wants the best care regardless of cost—for someone else bears the cost.").

5

to find the converse as well:  that without the prior toe injury, the subsequent permanent partial disability would not have been as great as it was.

The Director confuses the standards necessary to show "not due solely" to the subsequent injury in partial and total permanent disability cases.  In a total disability case, the employee could be "more injured" as a result of the subsequent injury without necessarily entitling his employer to relief from the special fund.  For example, the worker could be thirty-five percent permanently disabled from his prior injury but still one hundred percent permanently disabled from his subsequent injury.  Thus, in order to meet the "not due solely" requirement, the employer would have to prove that without the prior injury, the worker would not now be totally permanently disabled.  *See Two "R" Drilling Co. v. Director, OWCP,* 894 F.2d 748, 750 (5th Cir.1990) (per curiam).

In the case of permanent partial disability, however, all the employer must show to meet the "not due solely" requirement is that an increased permanent partial disability results when the injuries from the prior and subsequent injuries are combined.  Whenever the disability is increased from the combination of the two injuries, the resulting permanent partial disability is necessarily "not due solely" to the subsequent injury.[6]

The ALJ found that the permanent partial disability resulting from Ladner's fall was increased because of his previously-injured

---

[6]This happenstance may explain why Congress added the "materially and substantially greater" requirement in permanent partial disability cases.  *See infra* part V.B.

6

toe.  Therefore, assuming for the moment the sufficiency of that finding,[7] the ALJ correctly determined that this part of the third statutory factor was met.

B.

The Director claims that the ALJ was required to state explicitly that Ladner's permanent partial disability was "materially and substantially greater" than it would have been had the toe injury never occurred.  Both sides concede that the ALJ never made an explicit "materially and substantially greater" finding.  Recently, however, we noted that "[a]lthough it would be helpful if attorneys asked questions designed to elicit the "magic words' that authorize special fund relief, we decline to adopt a rule that would require a rote recitation of the applicable legal standard."  *Ceres,* 118 F.3d at 391.

Instead, when the "magic words" are absent from the record, "the fact finder's inquiry must of necessity be resolved by inferences based on such factors as the perceived severity of the pre-existing disabilities and the current employment injury, as well as the strength of the relationship between them."  *Id.* Thus, assuming for the moment the sufficiency of the evidence, it was not error, in and of itself, that the ALJ failed to state explicitly that the permanent partial disability was "materially and substantially greater" as a result of the prior toe injury.

V.

_____

[7]We address the Director's sufficiency of the evidence claims in part V, *infra.*

7

The Director maintains that even if the ALJ applied the correct legal standards in determining the two parts of the third statutory factor, the evidence cannot support a finding in favor of the employer on either part.  We agree with regard to the second part.  First, we address the sufficiency of the "not due solely" finding.  Then, we discuss the "materially and substantially greater" determination.

A.

The evidence is sufficient to find that Ladner's current permanent partial disability is "not due solely" to the fall from the ladder.  At the proceedings, Hopper testified to this conclusion.  Although there was conflicting evidence, the ALJ was entitled to weight Hopper's testimony more and others' less.  The record indicates that the ALJ accepted Hopper's conclusion that Ladner's permanent partial disability was increased because of the prior toe injury.  This finding was a reasonable inference.

B.

The same cannot be said about the second part.  Any ALJ finding that Ladner's permanent partial disability was "materially and substantially greater than that which would have resulted from the subsequent injury alone," 33 U.S.C. § 908(f)(1), is not supported by the evidence.  Satisfying the "materially and substantially greater" prong of the statutory test requires "an employer [to] present evidence of the type and extent of the disability that the claimant would suffer if not previously disabled when injured" subsequently.  *Director, OWCP v. Newport*

8

*News Shipbuilding & Dry Dock Co.,* 8 F.3d 175, 185 (4th Cir.1993), *aff'd,* 514 U.S. 122, 115 S.Ct. 1278, 131 L.Ed.2d 160 (1995).

Thus, the employer must offer some proof of the extent of the permanent partial disability had the pre-existing injury never existed.[8]  *See Newport News,* 8 F.3d at 185-86 & n. 9. Ingalls can offer only testimony that the permanent partial disability was increased because of the prior toe injury.

There is no evidence suggesting that the resulting permanent partial disability was "materially and substantially greater," nor is there any quantification of the resulting permanent partial disability in the absence of the prior injury.[9]  Although Hopper's testimony is enough for a rational person to infer that the resulting permanent partial disability was increased because of the prior toe injury, no reasonable fact finder could infer that the permanent partial disability was "materially and substantially greater than that which would have resulted from the subsequent injury alone."  33 U.S.C. § 908(f)(1).

---

[8]In *Newport News,* the evidence the employer presented was similar to that in the present case.  Concluding that the employer had not met the statutory burden, the court noted:  "Newport News showed that the Claimant suffered from a pre-existing permanent partial disability in the cervical spine area that created a five percent whole body impairment.  After the work-related injury at issue, the Claimant suffered an ultimate permanent partial disability that produced a whole body impairment of eighteen percent....  This conclusion stops short of identifying whether the ultimate permanent partial disability is materially and substantially greater than a disability cause by the work-related injury only."  *Newport News,* 8 F.3d at 186 n. 9.

[9]Because we find the standard has not been met in this case, we need not express any view about what evidence would support a "materially and substantially greater" inference.

Therefore, because Ingalls has failed to offer sufficient evidence needed to obtain special fund relief under § 908(f)(1), we GRANT the petition for review and REVERSE and REMAND to the BRB for proceedings consistent with this opinion.