**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**October 26, 2006**

**Charles R. Fulbruge III**
**Clerk**

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

)))))))))))))))))))))))))))

No. 05-61083
Summary Calendar

)))))))))))))))))))))))))))

CHEVRON USA, INC; CRAWFORD & CO, INSURANCE CARRIER

Petitioners,

v.

CHRISTOPHER HEAVIN; DIRECTOR, OFFICE OF WORKERS' COMPENSATION
PROGRAMS, US DEPARTMENT OF LABOR

Respondents.

_____

Petition for Review of an Order of the Benefits Review Board
(04-0661)

_____

Before DEMOSS, STEWART, and PRADO, Circuit Judges.

PER CURIAM:[*]

　　Petitioners Chevron USA, Inc. ("Chevron") and Crawford & Co.
("Crawford") appeal the order of the Benefits Review Board ("BRB"
or "the Board") affirming the administrative law judge's ("ALJ")
decision to deny Petitoners' request for special fund relief
under the Longshore and Harbor Workers' Compensation Act
("LHWCA")§ 8(f) , 33 U.S.C. §§ 908(f), 944.　The BRB's order

_____

　　[*] Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIRCUIT
RULE 47.5.4.

contains no reversible error.  The Board correctly applied the law, and it properly concluded that the ALJ's factual findings were supported by substantial evidence on the record as a whole. We therefore AFFIRM the Board's order.

## I. FACTUAL AND PROCEDURAL HISTORY

Christopher Heavin ("Heavin") began working for subsidiaries of Gulf Oil[1] on the day of his graduation from college in 1976. On October 13, 1986, while working as a facility operator, Heavin fell approximately forty feet from an offshore drilling platform. He suffered a bruised heart, punctured lungs and diaphragm, an injured liver, a laceration to his left kidney, and fractures to his ribs, back, hip, and right femur.

In February 1982, prior to his accident, Heavin was treated for back pain at Lafayette General Hospital.  Heavin also suffered from pre-existing kidney problems.  In March 1983, Dr. Charles Williams removed Heavin's right kidney due to a congenital deformity.

Heavin filed a claim for benefits arising from the injuries that he sustained from the October 13, 1986, accident against employer Chevron and Crawford, Chevron's insurance carrier, under the LHWCA, 33 U.S.C. § 901 et seq., as extended by the Outer Continental Shelf Lands Act, 43 U.S.C. § 1333 et seq.  The ALJ issued a Decision and Order Granting Permanent Total Disability

---

[1]Gulf Oil later merged with Chevron.

2

Benefits on December 11, 2003. Of relevance to this appeal, the ALJ denied Chevron and Crawford's petition for section 8(f) relief because the ALJ found that Chevron and Crawford failed to prove that Heavin's permanent total disability was not due solely to the injuries he sustained from the October 13, 1986, accident. The ALJ then issued a Decision and Order Denying Request for Modification dated May 7, 2004.

On May 20, 2004, Petitioners filed a timely notice of appeal with the BRB. On April 26, 2005, the Board issued its Decision and Order, which, among other things, affirmed the ALJ's decision to deny Petitioners' request for section 8(f) relief.

Following the Board's decision, Petitioners filed a petition for review with the Ninth Circuit Court of Appeals on June 22, 2005. The Ninth Circuit transferred the case to this court under 28 U.S.C. § 1631 because Heavin sustained his injuries while working in the Gulf of Mexico.

The ALJ's Decision and Order Granting Permanent Total Disability Benefits resolved several issues related to Heavin's workers' compensation claim; however, the sole issue raised in this appeal is whether Petitioners have proved that they qualify for section 8(f)'s super fund relief.

## II. STANDARD OF REVIEW

When considering an appeal of an ALJ's order, the BRB lacks statutory authority to "to engage in a de novo review of the

3

evidence or to substitute its views for those of the ALJ." <u>Ceres Marine Terminal v. Dir.</u>, 118 F.3d 387, 389 (5th Cir. 1997); <u>see</u> 33 U.S.C. § 921(b)(3). The BRB must accept the ALJ's findings unless they "are not supported by substantial evidence in the record considered as a whole or unless they are irrational." <u>Ceres</u>, 118 F.3d at 389. Therefore, when reviewing a decision from the BRB, this court's "only function is to correct errors of law and to determine if the BRB adhered to its proper scope of review--i.e., has the Board deferred to the ALJ's fact-finding or has it undertaken de novo review and substituted its views for the ALJ's." <u>Id.</u> (quoting <u>Avondale Shipyards, Inc. v. Vinson</u>, 623 F.2d 1117, 1119 n.1 (5th Cir. 1980)). When conducting a review of the Board's order, this court must "independently examine the record to determine whether the ALJ's findings are supported by substantial evidence." <u>Id.</u> We determine whether the ALJ's findings were supported by substantial evidence because the LHWCA "has the effect of shifting deference away from the BRB and to the ALJ." <u>Id.</u> at n.1.

Substantial evidence is "that relevant evidence--more than a scintilla but less than a preponderance--that would cause a reasonable person to accept the fact finding." <u>Dir. v. Ingalls Shipbuilding, Inc.</u>, 125 F.3d 303, 305 (5th Cir. 1997). In other words, substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Louis Dreyfus Corp. v. Dir.</u>, 125 F.3d 884, 886 (5th

4

Cir. 1997).

### III. DISCUSSION

Petitioners contend that the Board and the ALJ's finding that Petitioners failed to satisfy section 8(f)'s requirements is not supported by substantial evidence. Specifically, Petitioners point to evidence which they argue clearly demonstrates that Heavin's pre-existing back and kidney problems contributed to his current permanent total disability. Petitioners also argue that the ALJ erred by focusing on the fact that their experts addressed the incorrect standard for satisfying section 8(f). Petitioners maintain that the ALJ should have delved into the record to determine whether Petitioners produced enough evidence to prove that they met section 8(f)'s requirements.

Traditional workers' compensation regimes follow the "aggravation rule," which makes an employer liable for an employee's entire disability even though the disability resulted from a current employment injury and a pre-existing impairment. Ceres, 118 F.3d at 389. However, section 8(f) limits the employer's liability for a work-related permanent disability if the employer can show that the employee had a pre-existing permanent partial disability that contributed to the current employment-related disability. Id.; see 33 U.S.C. § 908(f). After 104 weeks, section 8(f) shifts liability from the employer to a special fund financed through contributions from employers

5

in the industry.  Ingalls, 125 F.3d at 306 n.4; see 33 U.S.C. §§ 908(f)(1), 944.

The elements that an employer must establish to take advantage of section 8(f)'s super fund provision depend on whether the employee suffered a permanent partial disability or a permanent total disability.  Two R Drilling Co. v. Dir., 894 F.2d 748, 750 (5th Cir. 1990).  In this case, the ALJ determined that Heavin suffered a permanent total disability[2] as a result of his work-related injuries from the October 13, 1986, accident.  Thus, Petitioners must establish that Heavin had: "(1) an existing permanent partial disability before the employment injury; (2) that the permanent partial disability was manifest to the employer; and (3) that the current disability is not due solely to the employment injury."  Id. (citations omitted).  The employer bears the burden of proving these elements.  Id.; Louis Dreyfus, 125 F.3d at 887.

The ALJ determined that Petitioners had satisfied the first two of section 8(f)'s three requirements.  Therefore, the only disputed issue on appeal is whether Petitioners proved that Heavin's current disability is not due solely to the employment

---

[2]Under the LHWCA, a permanent total disability means that the claimant has suffered injuries which prevent him from reentering the labor force.  See Ceres, 188 F.3d at 390-91; see also 33 U.S.C. § 902(10) (stating that "disability means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment").

6

injury.[3]  Petitioners contend that they met the contribution requirement because Heavin's October 13, 1986, accident would not have rendered him permanently totally disabled absent his pre-existing back and kidney disabilities.  Petitioners also argue that this court should grant them section 8(f) relief as a matter of public policy to avoid discouraging employers from hiring employees with pre-existing permanent partial disabilities.

A.   The Contribution Requirement

Petitioners maintain that the Board and the ALJ erred by finding that it did not meet the contribution requirement.  To support its claim, Petitioners cite to a medical report by Dr. James London in which he opined that Heavin's injuries from the October 13, 1986, accident combined with his pre-existing back impairment to produce a greater total impairment than would have resulted from the work injury alone.  Petitioners also rely on Dr. London's deposition testimony in which he stated that Heavin's current work restrictions arose from both the October 13, 1986, injuries and his pre-existing back impairment.

In addition to the pre-existing back condition, Petitioners maintain that Heavin's pre-existing kidney disability contributed to his present disability.  A medical report authored by Dr. London dated August 25, 1998, stated that Heavin's pre-existing congenital kidney condition made his injuries from the October

---

[3]This element is also known as the contribution requirement. See Ceres, 118 F.3d at 389.

7

13, 1986, accident materially and substantially greater. Petitioners also rely on a medical report by Dr. Nachman Brautbar, which opines that the removal of Heavin's right kidney in 1983 was a contributing factor to his current impairment because being hired with one kidney increases the risk for developing renal failure and hemodialysis. Finally, Petitioners cite a medical report by Dr. Peter Grodon in which he noted that Heavin's kidney condition left him vulnerable to nephrotoxic drugs and profound dehydration. Petitioners use Dr. Grodon's report to argue that the pre-existing kidney condition contributed to Heavin's current permanent total disability. Petitioners maintain that if Heavin still had a right kidney, he would be able to reenter the labor market because he would have higher kidney function, which would allow him to take medications that would enable him to control his back pain and incontinence.

Contrary to Petitioners' arguments, the ALJ found that Heavin's pre-existing back condition did not contribute to his current permanent total disability. The ALJ cited a medical report from Dr. Blanda, which noted that Heavin's back pain resulted from kidney problems. A report from Dr. Raymond Linovitz also suggested that Heavin's back problem really arose from his kidney problems or possibly a sciatic nerve problem. The ALJ credited Dr. Linovitz's opinion that a 1982 medical record referring to back pain with no follow-up treatment was insufficient to show that Heavin suffered from a pre-existing

8

back condition. The opinions of Drs. Blanda and Linovitz provide substantial evidence--such relevant evidence as a reasonable mind might accept as adequate to support a conclusion--to sustain the ALJ's determination that Heavin's pre-existing back condition, if he even had one, did not contribute to his present disability. See Louis Dreyfus, 125 F.3d at 886.

There was also substantial evidence in the record for the ALJ to conclude that Heavin's pre-existing kidney problems did not contribute to his present disability. Dr. Grodon testified that "You have a perfect example of people donating a kidney for transplant, and they have one kidney left, and they live normal lives...[Heavin] does not have a disability because of his kidneys. Even now." Heavin v. Chevron USA, Inc., 2002-LHC-2122, 07-105398, at 27 (Dep't of Labor Dec. 11, 2003). Put differently, only having one kidney does not limit someone from the labor market. Dr. Grodon also stated that "considering the substantial trauma to his body, in my opinion, both kidneys would have been damaged, in all medical probability to an identical degree." Id. Therefore, even assuming Heavin's kidney problems did limit him for the labor force, the October 13, 1986, accident was so traumatic that it alone would have been sufficient to render Heavin permanently totally disabled. The ALJ concluded from this testimony that Heavin's pre-existing kidney problem played no role in the severity and extent of his permanent condition. In other words, Heavin's pre-existing kidney problems

9

did not contribute to his present inability to enter the labor force.

The record yielded substantial evidence to support the ALJ's finding that neither Heavin's pre-existing back condition, if he had one, nor his pre-existing kidney problems contributed to his present inability to reenter the labor force. The ALJ credited a medical report from Dr. Grodon dated June 18, 2001, which stated that Heavin's orthopedic limitations, not his liver or kidney disorders, limited him from the labor market. Thus, Petitioners' own expert, Dr. Grodon, provided the substantial evidence for the ALJ to determine that Heavin's pre-existing kidney condition did not contribute to his current permanent total disability.

Having reviewed both Petitioners' arguments and the ALJ's decision and order, Petitioners establish--at best--that a fact finder could draw multiple inferences from the evidence in the record. The well-established law in this circuit is that whether "the facts may permit diverse inferences is immaterial. The administrative law judge alone is charged with the duty of selecting the inference which seems most reasonable and his choice, if supported by the evidence, may not be disturbed." Presley v. Tinsley Maint. Serv., 529 F.2d 433, 436 (5th Cir. 1976); Mendoza v. Marine Pers. Co., 46 F.3d 498, 500 (5th Cir. 1995). It is the ALJ who "determines the weight to be accorded to evidence and makes credibility determinations." Mendoza, 46 F.3d at 500. Further, "where the testimony of medical experts is

at issue, the ALJ is entitled to accept any part of an expert's testimony or reject it completely." Id. at 501; Mijangos v. Avondale Shipyards, Inc., 948 F.2d 941, 945 (5th Cir. 1991). In this case, the ALJ's selection of inferences was reasonable and supported by the evidence. Therefore, this court cannot disturb the ALJ's factual findings.

Petitioners argue that the ALJ erred by focusing on the fact that their experts' opinions did not address the correct legal standard for permanent total disability cases. Petitioners' experts, Drs. London and Grodon, stated that Heavin's current injury is materially and substantially greater because of his pre-existing injuries. The ALJ correctly noted that those opinions would be relevant to a permanent partial disability case, but not to Heavin's permanent total disability case. See Two R Drilling, 894 F.2d at 750. Petitioners contend that instead of focusing on the fact that their experts addressed the incorrect standard, the ALJ should have delved into the record to determine whether Petitioners had proved the contribution requirement for a permanent total disability.

Petitioners' argument fails for two reasons. First, in permanent total disability cases, an employer cannot establish the contribution requirement by simply showing that the employee's current disability is greater than it would have been absent the employee's pre-existing impairments. Ceres, 118 F.3d at 390; Ingalls, 125 F.3d at 306-07. Instead, the employer has

11

to prove that the employee would not be totally disabled--i.e., unable to reenter the labor force--without his prior injury. Ingalls, 125 F.3d at 307. Second, the ALJ's decision demonstrates that the ALJ looked beyond the fact that Petitioners' experts addressed the incorrect standard and that the ALJ delved into the record evidence when making factual determinations. For example, the ALJ discredited Dr. Grodon's testimony that Heavin's current disability is substantially greater than it would have been from the October 13, 1986, accident alone not only because this testimony was irrelevant to the correct standard, but also because it was conclusory and contradicted some of his other statements. Heavin, 2002-LHC-2122, 07-105398 at 27.

B.   Public Policy

Petitioners argue that this court should grant them section 8(f) relief as a matter of public policy because Congress enacted section 8(f) to reduce discrimination against handicapped workers. In order to further congressional intent, Petitioners contend that this court should construe section 8(f) liberally in favor of employers.

Almost all authorities agree that Congress enacted section 8(f) to diminish an employer's incentive to discriminate against partially disabled workers. See Lawson v. Suwanee Fruit & S.S. Co., 336 U.S. 198, 201 (1949); Ceres, 118 F.3d at 389. Section 8(f) strikes a balance between encouraging employers to hire

12

partially disabled workers and avoiding a moral hazard problem in which employers would seek to shift liability to the special fund in cases where there were only insignificant pre-existing injuries. <u>Ingalls</u>, 125 F.3d at 306. Therefore, the elements that an employer must prove to benefit from section 8(f) reflect Congress's judgment about the best way to achieve the public policy goal of reducing discrimination against disabled workers. Broadly referring to Congress's desire to reduce discrimination against the partially disabled is no substitute for actually meeting section 8(f)'s demands. Public policy does not entitle Petitioners to section 8(f) relief because Petitioners failed to meet the contribution requirement.

## IV. CONCLUSION

For the reasons stated above, we AFFIRM the decision of the Benefits Review Board.

AFFIRMED.